**PETITT et al. v. DOUBLE-O OIL CO. et al.**

No. 10101—Opinion Filed May 17, 1921.

(Syllabus.)

**Oil and Gas—Leases—Termination—Cancellation—Accounting for Production.**

Where a contract extending an oil and gas lease expressly provides that the grantee shall commence drilling a well for oil and gas upon the premises in 30 days and shall complete the same within 60 days from the date thereof, and, failing to find oil or gas in paying quantities, shall within six months thereafter surrender said lease and deliver to the grantor a good and sufficient release, and the well was commenced and completed within the time specified, but the same was a dry hole, and the grantees abandoned the lease, but did not release the same within six months or at any time thereafter, but within six months attempted to assign the lease to another, and two years and four months thereafter the grantor executed an oil and gas lease to A., who filed his lease for record immediately, and six months after A.'s lease was recorded, the assignee of the grantee in the extension agreement assigned the lease to S., who was attempting to enter upon the premises and begin drilling operations thereon, when this action was commenced by the grantor in the extension agreement and A., the holder of the oil and gas lease last mentioned—held: (a) The rights of the grantee in the extension agreement and its assigns automatically terminated with the completion of the dry hole and the abandonment of the lease; (b) that the lease to A. is valid and subsisting; (c) that the grantor in the extension agreement and A., the holder of the valid lease, are entitled to have the lease mentioned in the extension agreement canceled and held

for naught, and are entitled to an accounting between them and the defendants, of the proceeds of all oil and gas produced from the leased premises.

Error from District Court, Creek County; Mark L. Bozarth, Judge.

Action by Millie Petitt and others against the Double-O Oil Company and others to cancel oil lease. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

H. T. Walker, J. J. Bruce, R. E. Stewart, F. A. Rittenhouse, and J. H. Stevens, for plaintiffs in error.

T. J. Farrar, Geo. S. Ramsey, Edgar De Meules, Malcolm E. Rosser, and Villard Martin, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Okmulgee county; Hon. Mark L. Bozarth, Judge.

This action was commenced on February 27, 1917, by Millie Petitt and J. C. Petitt, as owners, and Spencer Adams, as holder of an oil and gas lease on the following described real estate situated in Okmulgee county, Oklahoma, to wit, the northeast quarter of section 9, in township 14 north, range 14 east of the Indian base and meridian—to set aside a certain oil and gas lease to Double-O Oil Company, dated October 17, 1912.

The cause was tried to the court, and the court made no separate findings of fact, but made a general finding in favor of the defendants, rendering a judgment in their favor, from which judgment the plaintiffs have appealed to this court.

The plaintiff in error, Millie Petitt, as a Creek freedwoman, was allotted the above described real estate. Immediately upon becoming of age, Millie Petitt, then Millie Stephens, deeded this land to her mother, Ella Hadley, September 28, 1912. On October 17, 1912, Ella Hadley executed to Double-O Oil Company an oil and gas lease covering the Millie Petitt allotment, above described, and also the north half of the northwest quarter of section 16, township 14 north, range 14 east, being a part of the Ella Hadley allotment. On December 10, 1912, Ella Hadley and Wm. Hadley, her husband, reconveyed to Millie Petitt, nee Stephens, the Millie Petitt allotment.

The land herein involved, as hereinbefore stated, the N. E. ¼ of sec. 9, Twp. 14 N., R. 14 E., was allotted to Millie Petitt, nee Stephens, and the S. E. ¼ of the same section was allotted to her brother, Willie Stephens, and the N. ½ of the N. E. ¼ of section 16, which joined the Willie Stephens

allotment on the south, was allotted to the mother of the parties, Mrs. Ella Hadley.

On October 17, 1912, Ella Hadley, joined by her husband, Wm. Hadley, executed an oil and gas lease to the defendant, Double-O Oil Company, covering the Millie Petitt tract and the Ella Hadley tract, but did not cover the Willie Stephens tract. The lease recited the consideration of $1.00 and other good and valuable considerations, and of the covenants and agreements hereinafter contained, and contained a further provision as follows:

"It is further agreed and understood that the party of the second part is to commence operations in connection with the drilling of a well for oil and gas upon the southeast quarter of section nine, in township fourteen north, range fourteen east, within 30 days from the date of this lease, and to pursue said operation to completion without unnecessary delay, unavoidable accidents and water conditions to be at all times considered; that if oil or gas be found in paying quantities in the well hereinabove provided for, then the party of the second part agrees to prospect and develop the premises herein leased as soon as practicable, and to protect all lands from waste by other drilling operations. A failure to commence and complete said first or test well on said southeast quarter of section nine, shall render this lease absolutely null and void, but the drilling of such well and the finding of oil or gas therein in paying quantities, and the development of the premises herein leased shall operate as full payment of all rentals under this lease saving to the lessor as herein provided, the one-eighth part of all the oil production and the $250.00 per year for each gas well."

It will be observed that a test well was to be drilled upon the Willie Stephens land, which lay between the two tracts included in the lease. No well was commenced upon the Willie Stephens allotment until in January, 1913, and a small amount of gas being found on this land, no further development was made and the premises were abandoned.

The record discloses without dispute that one H. E. P. Stanford was the organizer and president of the Double-O Oil Company, and that he was the party who prepared the Millie Petitt deed to her mother, and he was the party who prepared and managed the execution of the gas lease from Ella Hadley to the Double-O Oil Company, and also in December prepared and attended to the execution of the deed from Ella Hadley to Millie Petitt, and he is the sole manager of the Double-O Oil Company, and that company drilled the well on the Willie Stephens allotment. That well was not commenced until some 30 days after the time specified

in the lease. He testified that he secured from Ella Hadley an acknowledgment that the well was commenced within the time, but that the written acknowledgment could not be found at the time of the trial.

After the execution thereof, assignments were made by the Double-O Oil Company to numerous parties of interest in said lease. Stanford testified that the Double-O Oil Company and its several assignees were partners in the lease, and that thereafter the Double-O Oil Company entered into a written extension agreement with Millie Petitt on December 30, 1913, which agreement was as follows:

"Whereas, on the 17th day of October, 1912, Ella Hadley joined by her husband, William Hadley, made and executed to the Double-O Oil Company a certain oil and gas lease, covering the following described lands, to wit: The northeast quarter of section nine, township fourteen north, range fourteen east (amongst other lands) in Okmulgee county, Oklahoma.

"Whereas, since the execution of said lease the above described tract of land has been by the said Ella Hadley and William Hadley deeded in fee to the undersigned.

"Now, therefore, Know all men by these presents, That we, Millie Petitt and T. J. Petitt, her husband, for and in consideration of the sum of One Dollar, and other valuable considerations, the receipt of all of which is hereby acknowledged, hereby ratify and confirm said oil and gas lease, and agree that same may be extended for a period of sixty days from this date upon the following condition: that the said Double-O Oil and Gas Company, its successors or assigns, shall within thirty days from this date commence the drilling of a well for oil or gas upon the land and premises herein described and shall complete the same within sixty days from this date, and failing to find oil or gas in paying quantities shall within six months thereafter surrender said lease and shall deliver to the said Millie Petitt and T. J. Petitt a good and sufficient release of said oil and gas lease.

"The Double-O Oil Company further agrees to furnish releases to the said Millie Petitt and T. J. Petitt from any parties to whom they may have assigned any interest in and to the above mentioned lease should they fail to develop oil and gas in the time mentioned above.

"Witness our hands and seals this 30th day of December, 1913.

"Millie Petitt.
"C. J. Petitt.
"(Corporate Seal.)
"Double-O Oil and Gas Co.
"By H. E. Stanford, Pres.

"Attest: Harry C. Devinna, Secretary."

The Double-O Oil and Gas Company, as a partner of its several assignees, after procuring the above agreement, entered upon said premises in pursuance thereof in January or February, 1914, and drilled a dry hole upon the Millie Petitt allotment, and thereafter moved off all their casing, machinery, property, and effects, and no further efforts were made to develop this allotment for oil or gas from that time until after the commencement of this action (February 27, 1917), and no release was furnished as was therein agreed.

In August, 1916, Millie Petitt, and her husband, C. J. Petitt, executed and delivered to Spencer Adams, one of the plaintiffs in error, an oil and gas lease, which lease is still in force and effect.

After H. E. P. Stanford and his partners in this lease had drilled a dry hole on the Millie Petitt allotment and had wholly abandoned the lease, Mr. Stanford secured from several partners, assignments of their interests and organized the Hadley Oil Company, of which he was secretary, and afterwards, Hadley Oil Company, through W. Lusk as president and H. E. P. Stanford as secretary, on February 3, 1917, assigned the Ella Hadley lease to the defendant in error, W. E. Sunday, which was long after the Spencer Adams lease was recorded and of which lease they had full notice and knowledge. Said Double-O Oil Company and its partners in said Ella Hadley lease wholly abandoned said lease and said allotment in 1914, and said abandonment continued during 1914, 1915, and 1916, and until the commencement of this action in 1917, and during all of said time no efforts were made by any of them to develop this property for oil or gas. No oil or gas was produced in paying quantities or at all by them, and no delay money was paid by them or provided for in the lease, the sole and only consideration for this lease being the diligent and prompt development of this land for oil and gas or either of them.

Some time in the summer of 1914 a gas well was drilled in on the Ella Hadley allotment, and H. E. P. Stanford paid the first gas royalty to William Hadley, who controlled the Ella Hadley lease, Millie's allotment then standing in the name of Millie Petitt by reconveyance, Millie receiving no part of said first royalty—she accepted $142.85 sent her for 1915 by mistake, believing, as she testified, that it was from her mother's estate. Later, W. E. Sunday, in 1917, mailed Millie Petitt, who was still in Texas. a check for gas royalty, and she, having learn-ed that no gas was being produced from her land, returned this check, and at the trial counsel for Sunday contended that acceptance of the first check constituted an estoppel to declare a forfeiture of the lease by Millie Petitt.

Millie Petitt demanded a surrender and release of said oil and gas lease, on August 17, 1916, but no release was made, and on February 3, 1917, the lease was assigned by the Hadley Oil Company to the defendant W. E. Sunday, who took the same with full knowledge of the Spencer Adams lease, and he so testified.

A brief summary of the record discloses that Millie Petitt, nee Stephens, attained her majority on September 4, 1912, and on September 28, 1912, conveyed her allotment to her mother, Ella Hadley, to be held by her mother in trust, as she and her mother testified, to be relieved from annoyance from parties seeking to cheat her out of her land.

On October 17, 1912, Ella Hadley, joined by her husband, Wm. Hadley, executed the oil and gas lease involved, to the Double-O Oil & Gas Company, and on December 12, 1912, Ella Hadley, joined by her husband, Wm. Hadley, reconveyed to Millie Petitt her allotment, the same being the land involved in this litigation.

The test well on the Willie Stephens tract was commenced in February, 1913, and completed March 25, 1913, the same being plugged and the premises abandoned, and no further development was had on the same.

The ratification agreement made by Millie Petitt, joined by her husband, to the Double-O Oil and Gas Company was made on December 30, 1913, the sole consideration being that a well upon her allotment was to be begun in 30 days and to be completed in 60 days from that date, and failing to find oil or gas in paying quantities, lessee should within six months thereafter surrender said lease, and should deliver to the said Millie Petitt and T. J. Petitt, a good and sufficient release of said oil and gas lease from the Double-O Oil Company, and from any parties to whom it may have assigned any interest in said lease, should they fail to develop oil and gas in the time mentioned.

In January or February, 1914, the well was drilled upon Millie Petitt's land and the same was a dry hole, whereupon the premises were abandoned by the Double-O Oil Company, and no further development of any kind or character was made by it or its assigns thereafter.

On August 2, 1916, Millie Petitt, joined by her husband, executed an oil and gas lease upon her allotment to the plaintiff, Spencer

Adams, which was filed and recorded on the said date, and on August 18, 1916, Millie Petitt and T. J. Petitt made a written demand upon the Double-O Oil Company for a release of its lease upon the premises, which demand was never complied with.

Millie Petitt testified that she first learned that her mother had leased her allotment to the Double-O Oil Company about 2 or 3 months after her mother had reconveyed to her her allotment. That testimony was not disputed. On February 3, 1917, the Hadley Oil Company assigned the lease in controversy to the defendant, W. E. Sunday. Mr. Sunday testified that he inspected the premises and that the dry hole was all the development that was upon the same, and was all the development that had been made upon the premises prior to the institution of this suit; that he knew of the Spencer Adams lease at the time he took his assignment; that the same was shown in the abstract; that he had never at any time seen or talk-ed with Millie Petitt, and that he relied upon his inspection of the premises and what the assignors of the lease had told him, that it was a good lease, and that he understood that Millie Petitt had been paid one year's rent upon the same; that he took the lease and deposited in the depository bank to the credit of Millie Petitt, $166.67, which he estimated to be the amount due her of the $250 provided in the lease that was to be paid for a producing gas well; that he knew the gas well was not upon the Millie Petitt land, but was upon the Ella Hadley tract.

The assignment of the lease to the Hadley Oil Company by the Double-O Oil Company was on April 9, 1914, and as to its assign, in July, 1915, which was subsequent to the drilling of the dry hole on the land of Millie Petitt.

Mr. Stanford testified that he secured these assignments to the Hadley Oil Company and that he was secretary of the company, and all this was done subsequent to the extension agreement contract between Millie Petitt and Double-O Oil Company, which was also procured by Stanford, which agreement was on date of December 30, 1913, and which shows conclusively that the Hadley Oil Company took the lease with the knowledge of the extension agreement, and that under the same the dry hole on the Millie Petitt allotment had been drilled, and that therefore under the terms of the agreement all rights accruing thereunder in favor of the Double-O Oil Company and the Hadley Oil Company had expired by the express limitation contained in the contract.

The Hadley Oil Company had abandoned this lease, was not in the possession of the same, and had no rights therein on August 2, 1916, when Millie Petitt executed the lease to Spencer Adams, which lease was filed and recorded August 2, 1916, and the Hadley Company had no right to assign said lease on February 2, 1917, to the defendant, W. E. Sunday, all of which was known or could have been known by the said W. E. Sunday by the exercise of proper diligence on his part.

Under the facts disclosed by the record the contract of December 30, 1913, terminates the rights of the parties to this litigation, and the contract is such a contract as the contracting parties had the right to make under the law, and the same is plain and unambiguous. The object of this contract was clearly expressed in the instrument, that is to say, it was a ratification of the lease of November 17, 1912, in its entirety as to this tract of land, including the provision that "a failure to commence and complete said first or test well on said southeast quarter of section nine shall render this lease absolutely null and void." The term of its duration is expressly fixed therein, which was: "That same may be extended for a period of 60 days from this date upon the following conditions; that the said Double-O Oil and Gas Company, its successors or assigns, shall within 30 days from this date commence the drilling of a well for oil and gas upon the land and premises herein described, and shall complete the same within 60 days from this date (which was done, but nothing more), and failing to find oil or gas in paying quantities (which actually happened), shall within six months thereafter, surrender said lease and shall deliver to the said Millie Petitt and T. J. Petitt a good and sufficient release of said oil and gas lease."

We think this case comes clearly within the rule announced by the court in the case of Garfield Oil Co. v. Champlin et al., 78 Okla. 91, 189 Pac. 51, where, in the 4th and 7th paragraphs of the syllabus thereof, the court said:

"Where an oil and gas lease expressly provides that rights of parties shall terminate if no well be drilled within a fixed period, unless the lessee, on or before that date shall pay or tender to the lessor a fixed sum, time is of the essence of the contract."

"Mere ignorance of the contents of a lease on the part of one who becomes a party thereto is not sufficient to excuse noncompliance therewith. The lessee is bound by its terms, and where, under the terms of an 'unless' lease, the lease terminated if a well was not completed in six months from the date thereof, or rentals paid as therein provided, the failure to complete a well, or pay the rentals within the time stipulated, automatically terminated the lease."

Such was the holding of this court in the cases of Northwestern Oil & Gas Co. v. Branine, 71 Oklahoma, 175 Pac. 533, 3 A. L. R. 344; Curtis v. Harris et al., 76 Okla. 226, 184 Pac. 574; New State Oil & Gas Co. v. Dunn et al., 75 Okla. 141, 182 Pac. 514.

The leases in the cases cited provided for the extension thereof by the payment of the rentals as stipulated therein, but this contract has no such provision, but provided for the development and production of oil and gas in paying quantities within a fixed period, which provision was not complied with by the lessee or its assigns; hence for that reason, the lease automatically terminated with the expiration of the time fixed, to wit, six months from the date thereof.

"The Double-O Oil Company further agrees to furnish releases to the said Millie Petitt and T. J. Petitt from any parties to whom they may have assigned any interest in and to the above mentioned lease, should they fail to develop oil and gas in the time mentioned above."

These provisions must be read into the extension agreement, and when done, the evidence shows that the lease, as to this tract of land, automatically terminated at the end of six months from the date of the extension agreement.

From an examination of the entire record, we find that the findings and conclusions of the trial court "that the development in this territory was pursued with diligence and more so than would be expected in districts of this kind, as shown by the testimony as to the development of the surrounding country that existed at that time," and that "the court further finds that Millie Petitt, by reason of the accepted gas rentals, is estopped to claim anything under and by virtue of this lease," are clearly against the weight of the evidence, because the evidence discloses that the defendants failed to continue development after drilling a dry hole on the Millie Petitt allotment in March, 1914, while the surrounding country was being actively developed by others.

Mr. W. E. Vincent testified that he lived in section 10 in 1912, 1913, 1914, 1915, and 1916, and that there was production in section 12 in 1914, and quite a lot of production in section 10 in 1915 and 1916, and that a number of wells were brought in in sections 13 and 20.

His testimony was corroborated by the record of the Corporation Commission, which showed in 1915 and 1916, there were 19 or 20 wells producing in section 10 alone, and in sections 4, 15, and 20 there were a number of wells producing in 1915 and 1916; but during all of this time the defendants made no attempt to develop further the Millie Petitt allotment. Hence, we say that the court's finding that development was pursued with diligence is not supported by the evidence; and as hereinbefore stated, the Spencer Adams lease was dated August 2, 1916, and the defendant W. E. Sunday with notice of the same, acquired his assignment from the Hadley Company February 3, 1917.

The evidence further discloses that the plaintiff Millie Petitt ignored the Ella Hadley lease, the facts being that she executed the ratification agreement December 30, 1913, and that on the drilling and completion of the dry hole on her allotment in this agreement within 60 days, and the abandonment of the leased premises by the defendants, and the failure of the defendants to execute a release within six months, on to wit, August 2, 1916, she executed a lease to Spencer Adams and thereafter in the same month served a written notice and demand upon the Double-O Oil Company to execute such release, and made return thereafter to the defendant W. E. Sunday of the $166.67 when she ascertained that the same was intended for rental upon the gas well drilled upon her allotment, and she testified that she accepted the $142.85 sent her for rentals upon the gas well upon her mother's allotment for the year 1915 through a mistaken belief that the same was from her mother's estate, which was not disputed. In this situation we think she was not estopped from maintaining this action, and that the finding of the court that she was estopped from maintaining this action is not supported by the evidence and is clearly against the weight thereof.

The plaintiffs in error's first assignment of error is as follows:

"That the court erred in rendering judgment in favor of the defendants in error and against the plaintiffs in error, for the reason that the same is not sustained by sufficient evidence and is contrary to law, and is in direct conflict with the evidence in the case, to all of which the plaintiffs in error excepted to at the time."

For the reasons stated, and in view of the authorities cited, we are of the opinion that this assignment of error should be sustained. It is therefore ordered that the judgment of the trial court be reversed, and that judgment be herein entered in favor of the plaintiffs for the cancellation of the lease of October 17, 1912, as to her allotment, and that an accounting be had between the parties, and the cause remanded, with directions to the trial court to take further proceedings herein in accordance with the views herein expressed.

HARRISON, C. J., and McNEILL, MIL-LER, and KENNAMER, JJ., concur.