## HECKMAN v. DAVIS *et al.*

No. 6503.    Opinion Filed February 29, 1916.

Rehearing Denied March 21, 1916.)

(155 Pac. 1170.)

1.  **EVIDENCE—Declarations—Conversation Over Telephone—Judicial Notice.** Evidence of a conversation over a telephone is not inadmissible because such communication is uncertain, unreliable, and easily manufactured. The great improvement in the means of communication which the telephone has made, its nature, operation, and ordinary uses, are facts of general scientific knowledge of which the courts will take judicial notice as a part of public contemporary history.

2.  **SAME—Identification of Declarant.** The mere fact that a party testifying to a telephone conversation could not identify the voice of the person to whom he was speaking, does not render the conversation incompetent. It is a question of fact for the jury to determine whether under the proof the identity of the speaker has been established.

3.  **SAME.** A telephone conversation may be repeated in evidence where such conversation is otherwise admissible, though the witness did not identify positively the person with whom he had the conversation; the uncertainty of identity, if any, going only to the weight of evidence.

4.  **ESTOPPEL—Equitable Estoppel—Silence.** In order for the silence of a party to constitute an estoppel against him, it must have occurred under such circumstances as to have made it his imperative duty to speak, and the party in whose favor the estoppel is invoked must have been misled into doing that which he would not have done but for such silence.

5.  **SAME.** B., the holder of the record title to land, proposes to sell to C., who agrees to buy if the title is good. A., who is B.'s record grantor, is advised of the deal between B. and C., and remains silent as to his ownership. C. afterwards buys the land of B., taking his conveyance therefor. **Held,** that A. is estopped by his silence when he should have spoken, and cannot show, to defeat C.'s title, that his deed to B. was a forgery.

(Syllabus by Galbraith, C.)

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Action by P. E. Heckman against L. H. Davis and others. · Judgment for defendant Shannon, and plaintiff brings error. Affirmed.

*Vernor & Vernor* and *C. B. McCrory,* for plaintiff in error.

*J. E. Thrift,* for defendants in error.

Opinion by GALBRAITH, C. This was an action commenced in the trial court by P. E. Heckman against L. H. Davis and others, to quiet title to a tract of 130 acres of land located in Creek county. The defendants, except Shannon, made default, and Shannon filed an answer consisting of a general denial and cross-petition, setting up title to the land in himself, and pleading an estoppel by conduct, and therefore that Heckman was barred from denying his title, and prayed that the plaintiff take nothing by his action, and that the title to the land be quieted in himself as against Heckman and the codefendants. A jury was waived and the cause was tried to the court, and a finding made in favor of Shannon, and a judgment entered quieting the title to the premises in Shannon and against Heckman for costs. From that judgment, Heckman appealed to this court.

It appears from the record that the land involved was a part of the allotment of a deceased Creek Indian, and that Shannon was approached by a representative of L. H. Davis about the purchase of the land in August, 1911, and, after looking at the premises, answered that he would purchase the same if good title could be given. An abstract of the title was furnished Shannon, who submitted the same to J. A. Boyd, an abstractor at Sapulpa, with the statement that if Boyd said the title was in L. H. Davis

he would purchase it. Boyd, after investigation, reached the conclusion that the record title was in Davis, and so advised Shannon, but said to him that, since the land was a part of an Indian allotment, it was important to ascertain whether or not Heckman, who had purchased from the heirs, received a conveyance from all of the heirs of the allottee, and that he would call Heckman, who resided at Muskogee, over long distance phone and advise him of the deal and ascertain whether or not he had secured the title of all the heirs of the allottee. Boyd put in the call for Heckman from Sapulpa and was advised by the telephone operator that Heckman was on the other end of the line at Muskogee, and Boyd then had a conversation with him about the land deal, and became satisfied that all of the heirs had joined in the conveyance to Heckman, and that the title to the premises was in L. H. Davis, and Shannon was therefore advised that he could safely purchase the land, and he did close the deal with Davis. It later developed that the Davis deed to the land from Heckman was a forgery, but Shannon contended that Heckman was estopped by his conduct from asserting this fact, since, when advised by Boyd of Shannon's intention to purchase the land from Davis, he did not protest, nor even advise Boyd that he had not conveyed the land to Davis and was then the owner of it. Heckman denied having the conversation with Boyd over the telephone. Shannon testified that after the commencement of this suit he had called upon Heckman at his office in Muskogee and asked him about the telephone conversation with Boyd, and he said that he did talk with Boyd, but he was mistaken in the land about which Boyd was inquiring.

The assignments of error are discussed under three heads, as follows:

"First.     Was the alleged telephone communication between Mr. Boyd and Mr. Heckman, plaintiff, admissible as evidence?

"Second.    If the same was admissible as evidence, were there sufficient facts produced by the evidence of Boyd to call into operation the rule of equitable estoppel?

"Third.    Did the defendant Shannon, after pleading the alleged telephone conversation as an equitable estoppel, sustain the burden of proof in regard to what the conversation consisted of and whom it was carried on with?"

Boyd, who testified that the deed from L. H. Davis to L. O. Shannon was executed in his office at Sapulpa on September 2, 1911, was asked whether or not Mr. Shannon authorized him to do anything in connection with the transaction, and he answered, "Yes; by phone message." And when asked to state what the phone message was, testified as follows:

"Q.    I wish you would please state what the phone message was.    A.    Mr. Holmes Davidson brought an abstract to me and stated that Mr. Shannon had said that if I said the title was all right that he would take that piece of land and pay for it.    And I—I looked over the abstract and found, as far as the record showed, that the title was all right in Mr. Davis, and stated to Mr. Davidson though, that the question in my mind was as to whether or not the deed to Mr. Heckman from the heirs and allottee covered all the heirs, and then he said that was the only thing that bothered him, was the deed from the heirs and allottee, and it was suggested that I call Mr. Heckman and talk to him about the matter, which I did.    I stated as well as I remember to Mr. Heckman, that—

"By Mr. Vernor:    We object to the purported conversation over the telephone before Heckman is identified as having been at the other end of the line.

"By the Court: The objection is overruled. (To which ruling of the court the plaintiff excepts.)

"A. (continuing). I put in a call for Mr. Heckman and some one responded; of course I couldn't say whether it was him or not, the supposition would be that it was, and my recollection is that I stated to Mr. Heckman, as I had the abstract before me, that the abstract showed that he had secured title from the heirs of this allottee, mentioning the name of the allottee; I don't remember the name now; and I asked Mr. Heckman if he was sure that he had all the heirs, his reply was, as well as I remember, that he had all the heirs, and called my attention to the fact that Z. T. Waldron was a witness, as this abstract would show, and that Waldron represented the heirs. He also stated that he was in the habit in cases of this kind, of taking deeds from all the heirs, which he did in this case. I reported the conversation to Mr. Shannon, also to Mr. Davidson, who was representing Mr. Shannon at this time. Afterward they came into the office with a man purporting to be L. H. Davis, and had a deed prepared.

"By Mr. Vernor: The plaintiff moves to strike the testimony of the witness relating to a purported conversation with the plaintiff over the telephone, on the ground that there is no evidence to show, or identify, that the conversation was had with the plaintiff.

"By the Court: The court will withhold its ruling.

"By Mr. Thrift: Q. In putting in that phone call, for whom did you put in the call? A. P. E. Heckman. Q. Where was that call put in, where from? A. From my office here in Sapulpa. Q. And you put in the call for Mr. Heckman? A. Yes. I merely put the call in in the regular way, saying 'This is so and so, at Sapulpa, calling Heckman at Muskogee; pay here.' Q. Did long distance give you any response to that call? A. I was called and she reported that Mr. Heckman was ready to talk. Q. When you began that conversation with Mr. Heckman, did

you use his name, or ask if that was Mr. Heckman? A. As a natural consequence a man would, but I couldn't say positively that I did. I know I explained the circumstances; in fact told him who was talking and for whom I was talking. * * * Q. Had you ever had any conversation over the phone with Mr. Heckman prior to this time? A. Well, I couldn't say as to that, Judge; as I stated before, I have been doing abstract work for Mr. Heckman for a good while, and some of the work comes by phone and some by mail, and I couldn't say as to that. Q. Did you understand that the person to whom you were talking was Mr. Heckman? A. I so understood. Q. Mr. Boyd, please state whether or not, in the course of that conversation over the phone with Mr. Heckman, you stated whether or not any persons were contemplating the purchase of that land. A. My recollection is, I said this is the land that the record shows that you deeded to L. H. Davis.

"Mr. Vernor: We object to this testimony and purported conversation on the ground as heretofore stated.

"By the Court: The court reserves its ruling.

"A. And it is also stated that this sale was in progress.

"Mr. Vernor: I would like to make the same objection to all of this testimony in regard to the conversation over the phone.

"Q. Did I understand you to say, Mr. Boyd, that * * * there was a sale in progress? Did you state that the land so purchased was the land to be conveyed to Davis or was so purchased from Davis?

"Mr. Vernor: We object to that question as leading.

"The Court: The objection overruled. (Exceptions.)

"A. My recollection is that I stated to Heckman that I suppose this is the piece of land the record shows you deeded to L. H. Davis."

It is contended on behalf of the plaintiff in error that this telephone conversation was not competent, and its admission was prejudicial error for the reason that the person answering the call was not identified as Heckman, and in the absence of such identification the testimony was incompetent. With this contention we cannot agree. The uncertainty, if any, of the identification of the person responding to the call put in for Mr. Heckman would affect the weight of the testimony, and not its competency. Paragraph 2155, Wigmore on Evidence.

Mr. Chamberlayne, in his work on Modern Evidence, vol. 1, par. 794B, under the head of "Common Knowledge," says:

"Among the more salient features of modern industrial development of which judges possess the same knowledge as other intelligent members of the community, is the improved facility of communication due to the general introduction of the telephone into business and social life. 'Courts of justice do not ignore the great improvement in the means of communication which the telephone has made. Its nature, operation, and ordinary uses are facts of general scientific knowledge of which the courts will take judicial notice as part of public contemporary history.' The judge knows, as a matter of common knowledge, notorious facts concerning the use of the telephone as a means of communicating thought. The convenience of the telephone in use is obviously accompanied by certain inherent difficulties in satisfactorily proving the identity of the speaker which call for the sound administrative action of the presiding judge. Naturally, it is essential that the speaker should be identified. It is further required that the legal connecting relation of the party against whom the evidence of statements made at a telephone conversation is offered should be established to the judge's satisfaction wherever so doing would ordinarily be necessary. No special rules attach to the matter. Primarily, the ques-

tion of admissibility is one of administration. Should the speaker be identified by the tones of his voice, his later admissions, or by other sufficient evidence, direct or circumstantial, his verbal utterances made through the telephone will be regarded as competent. Absolute identification is not required. If the jury, having regard to all the circumstances of the case, might reasonably find that a designated individual was the speaker, what he says may be received upon ordinary principles of evidence."

In *Rogers Grain Co. v. T. O. Tanton, Trustee,* 136 Ill. App. 533, at page 538, discussing this question, the court said:

"Courts must recognize the convenience and use of telephones in business. 'When a person places himself in connection with a telephone system through an instrument in his office he thereby invites communication in relation to his business through that channel.' The converse of this must be true, that if a person uses a telephone in his place of business, and expresses a desire to communicate with a third party through his telephone, and a conversation takes place over the telephone under such circumstances, the fact that the voice was not identified does not render the conversation inadmissible, but it is a question of fact for the jury to say whether or not the proof identifies the speaker."

It will be recalled that Heckman had an office in Muskogee and a telephone in this office, and that the conversation admitted in evidence in this case is alleged to have taken place between Boyd, talking from his office at Sapulpa, and a person in Heckman's office, in Muskogee, whom he believed to be Heckman.

The Supreme Court of Iowa, in *Shawyer v. Chamberlain,* 113 Iowa, 742, 84 N. W. 661, 86 Am. St. Rep. 411, said:

"The defendant insists that the testimony of the plaintiff to a conversation with him through the telephone ought to have been excluded, for that it is of too uncertain and easily manufactured a character to be competent. These defects, if they exist, would not justify rejecting such evidence, but merely affect the weight it should receive. This method of communication, of recent origin, is one of the incidents of contemporary history, of which the courts take judicial notice. It greatly facilitates business transactions, and there is no better reason for rejecting proof of a conversation over a telephone line than of one had without its use. Identity may be established by means of the hearing or other circumstances quite as readily, though possibly not as certainly, as by sight. *Wolfe v. Railway Co.*, 97 Mo. 473, 11 S. W. 49 (3 L. R. A. 539), 10 Am. St. Rep. 331; *Oskamp v. Gadsden,* 35 Neb. 7, 52 N. W. 718, 17 L. R. A. 440 (37 Am. St. Rep. 428) ; *Sullivan v. Kuykendall,* 82 Ky. 483 (56 Am. Rep. 901). See *German Sav. Bank of Davenport v. Citizens' Nat. Bank,* 101 Iowa, 530 (70 N. W. 769, 63 Am. St. Rep. 399) ; *Davis v. Walter,* 70 Iowa, 465 (30 N. W. 804)."

In the light of these authorities we are constrained to hold that this telephone conversation was relevant and competent, and it was not error for the court to overrule the objection made to its admission.

2. It is contended on behalf of the plaintiff in error that even if the testimony of Boyd as to the telephone conversation was admissible, it was not sufficient to enable Shannon to invoke the rule of equitable estoppel.

The case of *Friar et al. v. McGilbray,* 45 Okla. 597, 146 Pac. 581, is cited by the plaintiff in error in support of the argument that the conversation involved in the instant case, if it occurred as contended by the defendants in error, was not sufficient to justify the application of

the doctrine of estoppel *in pais*. It is true that the court in the course of the opinion in that case said:

"The authorities cited by counsel for defendant support the doctrine that the owner of land may, by an act *in pais*, preclude himself from asserting his legal title; but they also show that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity."

The instant case presents an entirely different state of facts from those disclosed in the Friar Case. Here the public records showed title to the land to be in L. H. Davis. A party representing Davis calls Shannon's attention to the land and offers to sell it to him. Shannon goes and looks the land over and makes an offer of $400, if the title is good. An abstract of title is furnished, which he sends to an abstractor, with request for advice if Davis can make title. Heckman, as the record showed, conveyed the land to Davis. Heckman is called over the telephone and is advised of Shannon's wish to purchase the land of L. H. Davis. Heckman is silent and makes no claim to the title, and Shannon is permitted to complete the purchase and pay his money to Davis. This, therefore, seems to present all the necessary elements of an equitable estoppel.

"If a man is silent when he ought to speak, equity will debar him from speaking when conscience requires him to be silent." (10 R. C. L. 21.)

Section 818, Pomeroy's Eq. Juris., announces the rule as follows:

"Acquiescence consisting of mere silence may also operate as a true estoppel in equity to preclude a party from asserting legal title and rights of property, real or personal, or rights of contract. The requisites of such es-

toppel have been described. A fraudulent intention to deceive or mislead is not essential. All instances of this class, in equity, rest upon the principle: If one maintains silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent. A most important application includes all cases where an owner of property, A., stands by and knowingly permits another person, B., to deal with the property as though it were his, or as though he were rightfuly dealing with it, without interposing any objection, as by expending money upon it, making improvements, erecting buildings, and the like. Of course it is essential that B. should be acting in ignorance of the real condition of the title, and in the supposition that he was rightful in his own dealings."

This court has announced the rule in the third paragraph of the syllabus in *Bragdon v. McShea,* 26 Okla. 35, 107 Pac. 916, as follows:

"In order for the silence of a party to constitute an estoppel against him, it must have occurred under such circumstances as to have made it his imperative duty to speak, and the party in whose favor the estoppel is invoked must have ben misled into doing that which he would not have done but for such silence."

If Boyd's testimony was the truth, and the trial court found that it was, Heckman was advised before Shannon parted with his money that Shannon was negotiating to buy the land of Davis; and if he had spoken, as he should have done, with this knowledge before, Shannon would not have consummated the trade, and would not have parted with his money. Since Heckman failed to speak when he should have spoken, the law will compel silence at this time when he wants to speak. See, also, *Jones v. Perkins,* 43 Okla. 734, 144 Pac. 183; *Brusha et*

*ux. v. Board of Education of Oklahoma City*, 41 Okla. 595,. 139 Pac. 298.

3.   Lastly, it is contended that Shannon did not sustain the burden of proof which the law casts upon him of showing the extent of the conversation and that it was carried on with Heckman. The following excerpts from the testimony is probably a sufficient answer to this contention:

"Q.   When you began that conversation with Mr. Heckman, did you use his name, or ask if that was Mr. Heckman? A. As a natural consequence a man would, but I couldn't say positively that I did. I know I explained the circumstances; in fact, told him who was talking and for whom I was talking. * * * Q. Did you understand that the person to whom you were talking was Mr. Heckman? A. I so understood. Q. Mr. Boyd, please state whether or not, in the course of that conversation over the phone with Mr. Heckman, you stated whether or not any persons were contemplating the purchase of that land. A. My recollection is, I said this is the land that the record shows that you deeded to L. H. Davis— * * * Q. Did I understand you to say, Mr. Boyd. that your communication with Mr. Heckman was that there was a sale in progress? Did you state that the land so purchased was the land to be conveyed to Davis, or was so purchased from Davis? * * * A. My recollection is that I stated to Heckman that I suppose this is the piece of land the record shows you deeded to L. H. Davis. Q. What was said, if anything, by Mr. Heckman, in regard to the title to that land? A. I don't remember anything further except to say that he was satisfied with the title from the heirs and allottee, but that he took these other deeds as a matter of precaution, and as I stated before, that Mr. Waldron was the representative of the heirs. Q. Did he, in that conversation, say to you that he was still the owner of that land? A. He did not."

Shannon testified that after this action was commenced he called upon Heckman at his office at Muskogee and that Heckman then and there admitted that he had the conversation over the phone with Boyd, but said that he was mistaken about the land that Boyd had asked him about. It is true that Heckman denied making this admission to Shannon, as well as having the phone conversation with Boyd, but the trial court found against him on this, and we cannot say that that finding was error. The trial court had the advantage of hearing the witnesses testify and observing their manner while so doing, and thus had a better opportunity than the appellate court to pass upon the credibility of the witnesses. Still, from a careful reading of the record, we cannot say that Shannon did not sustain the burden of proof cast upon him by the law.

We find no prejudicial error in the record, and therefore recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.