## HARN v. INTERSTATE BUILDING & LOAN CO. et al.

No. 12868—Opinion Filed May 15, 1923.

Rehearing Denied June 19, 1923.

(Syllabus.)

**1. Subrogation—Right to Remedy.**

Subrogation is founded on the principles of equity and benevolence, and is not to be allowed in favor of one who has permitted the equity he asserts to sleep in secrecy until the rights of others would be injuriously affected by its assertion and enforcement.

**2. Same—Estoppel of Surety to Assert Right.**

Where the plaintiff executed notes as surety for W. and H., and suit was brought against the principals and surety on said notes, and judgment rendered thereon, and nothing appears in the judgments showing that plaintiff occupied the position of surety as to the other judgment debtors; and where several years after the judgments were rendered the defendant enters into negotiations with the judgment debtors for the purchase of certain real estate which is incumbered by the liens of said judgments, and W. furnishes a statement as to his liability on said judgments, and the plaintiff and H., who are husband and wife, furnish a statement as to their liability on said judgment, and defendant, relying upon statements of plaintiff and H., and without any knowledge that plaintiff was surety in

said transaction, purchased the real estate and procured releases of the judgments, and it appears that the rights of the defendant would be injuriously affected by the assertion of suretyship by the plaintiff and enforcement of the rights of subrogation, it would be contrary to the principles of equity to permit the enforcement of the rights of suretyship and subrogation on the part of the plaintiff.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Alice Harn against the Interstate Building & Loan Company and others asserting rights of suretyship and subrogation under judgments. Judgment for defendants, and plaintiff brings error. Affirmed.

W. F. Harn, for plaintiff in error.

Wilson, Tomerlin & Threlkeld and Ledbetter, Stuart, Bell & Ledbetter, for defendants in error.

COCHRAN, J. Prior to August, 1915, John F. Winans and his associates owned Winans addition in Oklahoma City, and Mrs. Alice Harn owned Harndale addition to Oklahoma City. On October 4, 1913, judgment was rendered in the superior court of Oklahoma City in favor of the Security National Bank in five separate suits and against John F. Winans, Alice Harn, and W. F. Harn, and on October 3, 1913, judgment was rendered in favor of the State National Bank against the same parties, and on the same date judgment was rendered in favor of the Western National Bank against John F. Winans and W. F. Harn. In August, 1915, the Winans and Harndale additions were subject to the liens of the above judgments. On August 17, 1915, the Security National Bank judgments and the State National Bank judgment were assigned to I. C. Enochs. Thereafter the Interstate Building & Loan Company entered into negotiations with John F. Winans and Alice Harn and W. F. Harn for the purchase of Winans addition and Harndale addition, these negotiations being handled by Mr. Sparrow. Sparrow first went to Winans, and procured from him a statement as to the portion of the six judgments then owned by Enochs, for which Winans was primarily liable. He advised Sparrow that the portion of this indebtedness for which Mr. and Mrs. Harn were liable, as between Winans and Mr. and Mrs. Harn, was $21,000. Sparrow made a memorandum of the figures given him by Winans, and then went to see Mr. Harn, who acted as the agent for Mrs. Alice Harn, and advised him as to the statements made by Winans, and asked Mr. Harn if the fig-

ures given by Winans were correct, and also advised him that he was on a deal with Winans and it was necessary as a basis for making the deal to know the amount of the indebtedness due by Winans and the amount due by the Harns, and Harn said that the figures given by Winans were practically correct, but he thought it was about $1,000 more than what it should be. Acting upon these statements, the Interstate Building & Loan Company purchased from John F. Winans the Winans addition and received a deed therefor on August 21, 1915, taking the property subject to the lien of the six judgments, and under an agreement which was as follows:

"The said Interstate Building & Loan Company agree to indemnify and hold you harmless against the enforcement of said judgments against you by the owners and holders of said judgments, their heirs and assigns.

"The agreement to indemnify and hold you harmless against any of said judgments shall not obligate the undersigned vendee in said deed to prevent execution sale on any of the property conveyed by you in said deed, nor shall this be construed to diminish any liability on the part of W. F. Harn and Alice Harn in said judgments, but the liability of said W. F. Harn and Alice Harn to remain absolute."

Acting further on said statements, on September 4, 1915, the Interstate Building & Loan Company purchased from Alice Harn the Harndale addition and the following agreement was executed:

"It is further agreed that there are now existing against said W. F. Harn and Alice Harn certain judgments. (There follows a recitation of the various judgments which were liens against said property.) And in consideration of said conveyance, said judgments are hereby satisfied and paid in full and shall be released absolutely as against W. F. Harn and Alice Harn. It is, however, understood and agreed that as between the judgment debtors in said several judgments, the liability of the first parties is $25,000; the remainder of said judgments being the liability of John F. Winans; and it is hereby understood that the owners and holders of said judgments reserve all their rights under said judgments as against said John F. Winans."

On the same day, satisfaction of the judgments as to Alice Harn and W. F. Harn was entered of record by I. C. Enochs, and on February 16, 1916, the satisfaction of said judgments as to John F. Winans was entered by Enochs.

On August 9, 1920, Alice Harn filed her petition in the district court of Oklahoma

county, alleging that she had signed notes on which judgment had been procured by the Security National Bank and the State National Bank as surety for her husband and John F. Winans, and was entitled to have judgment rendered in said case specifying that she was surety; that she had paid all of said judgments and was entitled to be subrogated to all the rights of the principal creditor, including the right to assert a lien upon the lands of the said John F. Winans, and judgment against John F. Winans in the sum of $57,555.47, and asked that such judgment be decreed to be a lien upon all the lands of John F. Winans, including Winans addition, and that the same be foreclosed. Upon a trial of the case, the district court rendered judgment for the defendants, and plaintiff has prosecuted this appeal.

The plaintiff insists that this is an action of equitable cognizance, and that it is the duty of this court to consider the whole record and weigh the evidence and to render judgment in accordance therewith. According to our view of the case, it is not necessary to review the various phases of the case presented in the trial court, as it is our opinion that the judgment of the trial court was clearly right upon the ground that the plaintiff was estopped to assert in this case any rights which she may have originally been entitled to as surety.

The plaintiff insists that that portion of the agreement between Alice Harn and Interstate Building & Loan Company reading as follows:

"The remainder of said judgments being the liability of John F. Winans; and it is hereby understood that the owners and holders of said judgments reserve all their rights under said judgments as against said John F. Winans"

—should be construed to mean that Alice Harn was the owner and holder of such judgments and reserved all of her rights under said judgments against John F. Winans. We do not think that the language of the agreement is subject to any such construction; neither do we think that the language of the agreement is to be construed as meaning that the judgments were paid in full by Alice Harn. Our interpretation of this agreement is that the liability of Alice Harn and W. F. Harn was admitted by them to be $25,000, and that all of these judgments were satisfied and paid in full as to the liability of Alice Harn and W. F. Harn, and that such settlement did not release the judgments as to the liability of John F. Winans; but as to him, the owner of the judgments reserved all of his rights, and that the owner of the judgments referred to I. C. Enochs and Interstate Building & Loan Company, and not to Alice Harn. She did not pay the entire judgments, and could not be considered as the owner of such judgments.

The plaintiff argues that the use of the words "owners and holders of said judgments" indicates that reference was not being made to I. C. Enochs. The same reasoning would apply to Mrs. Harn, as she was the person who signed this agreement and the person who was deeding the property, and W. F. Harn was not interested therein, but, if it is necessary to explain the use of the plural instead of the singular in referring to the owner of the judgments, this explanation can be very easily found when we consider the relation existing between Enochs and the Interstate Building & Loan Company, and the fact that they were operating together in the matter of purchasing this property and satisfying these judgments.

The Interstate Building & Loan Company purchased the Winans property and paid therefor the sum of $25,000 in cash and took it subject to Winans' portion of the liability on these judgments, relying upon representations of the plaintiff as to the amount of liability thereon. The Interstate Building & Loan Company also agreed with Winans, relying on these same representations, that it would hold him harmless against these judgments; and it also entered into a transaction with Mrs. Harn and purchased Harndale addition from her, procuring satisfaction of these judgments as to W. F. Harn and herself, relying upon the same representations, and we consider that she is now estopped from asserting that as to her Winans was personally liable for the entire amount of these judgments, that she was his surety, and was entitled to be subrogated to the rights of the principal creditor. It is our opinion, also, that the record shows that in the transaction by which Harndale addition was conveyed to the Interstate Building & Loan Company, Mrs. Harn did not pay any part of the liability of John F. Winans. but his liability, according to the statements furnished by all of the interested parties, was satisfied in full by the purchaser of Winans addition and was not satisfied out of the Harndale transaction.

In 25 R. C. L. 76, it is said:

"Subrogation is founded on the principles of equity and benevolence, and is not to be allowed in favor of one who has permitted the equity he asserts to sleep in secrecy until the rights of others would be injuriously affected by its assertion and enforcement."

See, also, Chamberlin v. St. Paul & Sioux City R. Co., 92 U. S. 299.

In Terry v. Haynes, 60 Okla. 34, 158 Pac. 1195, this court said:

"The unquestioned evidence was that Terry was present at the time of the sale of the mare and colt to plaintiff, and did not in anywise object to such sale, but acquiesced in the sale by indorsing the agreed price of the purchase of said animal on said note, and, therefore, in the absence of evidence of fraud and collusion, is estopped from setting up the invalidity of the sale of said mare and colt."

In Heckman v. Davis, 56 Okla. 483, 155 Pac. 1170, the court said:

"If Boyd's testimony was the truth, and the trial court found that is was, Heckman was advised before Shannon parted with his money that Shannon was negotiating to buy the land of Davis; and if he had spoken, as he should have done, with this knowledge before, Shannon would not have consummated the trade and would not have parted with his money. Since Heckman failed to speak when he should have spoken, the law will compel silence at this time when he wants to speak."

So in the case at bar, if, at the time Sparrow was negotiating for the purchase of the Winans and Harndale additions, the plaintiff had made known her rights as surety, the transaction would not have been carried out as it was; but the plaintiff not only permitted this transaction to go through without asserting her rights as surety, but represented that the liability of W. F. Harn and Alice Harn on the judgments was the amount which was recognized and deducted by the Interstate Building & Loan Company at the time Harndale was purchased and the representation was made that the liability of Winans was for the remainder of the judgments, and the Interstate Building & Loan Company, acting upon these representations, made the deal with Winans by which it purchased Winans addition, paid Winans $25,000 in money and settled Winans' portion of the judgments, and, afterwards, relying upon the same representations, purchased Harndale from Alice Harn and W. F. Harn and entered into a written agreement in which the liability of Alice Harn and W. F. Harn on the judgments was specified, and under which agreement the liability of the Harns on these judgments

was released. Under these circumstances, it would be inequitable to now permit Mrs. Harn to assert that she was surety for Winans and Harn, and to permit her to be subrogated to the rights of the judgment creditor against Winans or to permit her to recover against Winans. On account of the contract made between Winans and Interstate Building & Loan Company, the Interstate Building & Loan Company is obligated to hold Winans harmless against these judgments, and any judgment which might be rendered against Winans would in fact be a judgment against the Interstate Building & Loan Company.

The judgment of the trial court is affirmed.

McNEILL, KENNAMER, NICHOLSON. and MASON, JJ., concur. JOHNSON, C. J., and HARRISON, J., dissent.