**THE TEXAS CO. et al. v. PETITT et al.**

No. 13831—Opinion Filed Sept. 18, 1923.

Rehearing Denied Dec. 4, 1924.

Second Rehearing Denied Jan. 6, 1925.

(Syllabus.)

1. **Oil and Gas — Development Under Void Lease Over Protest—Recovery for Outlay.**

Parties, entering, under protest on the part of adverse parties, upon a leasehold, under a void oil and gas lease, for the purpose of operating and developing same, cannot recover as damages the expenditure incurred by reason of the development.

2. **Same — Purchase of Output Pending Suit — Accounting to Successful Party.**

Where oil and gas is purchased pending a suit to cancel the lease, under which same is produced, by parties having knowledge of such litigation and of the purpose of the adverse party to insist upon his rights, the purchaser cannot deduct the cost of production and operation in a suit for an accounting with the successful adverse party, but is liable for the value of all oil and gas purchased.

3. **Same — Assignment of Lease with Notice of Adverse Rights — Effect.**

One who takes an assignment of an oil and gas lease with knowledge of the fact that there are parties other than the assignors holding interest in said leasehold, or is in possession of facts sufficient to put a man of ordinary prudence upon inquiry which would lead to and enable him to ascertain the facts, is not an innocent purchaser in good faith, and takes only such interest as his assignor may have.

4. **Estoppel — Elements of Equitable Estoppel.**

The essential elements of an "equitable estoppel" are: First, there must be a false representation or concealment of facts. Second, it must have been made with knowledge, actual or constructive, of the real facts. Third, the party to whom it was made must have been without knowledge, or the means of knowledge, of the real facts. Fourth, it must have been made with the intention that it should be acted upon. Fifth, the party to whom it was made must have relied on or acted upon it to his prejudice. The representation or concealment mentioned may arise from silence of a party under imperative duty to speak; and the intention that the representation or concealment be acted upon may be inferred from circumstances.

5. **Same—Interest in Oil Production—Effect of Division Order to Pipe Line Company.**

The execution and delivery of a division

order designating the interest claimed by each party, in and to the production from an oil and gas mining lease, delivered to the pipe line company receiving the oil runs, is such an assignment of interest as will be binding between the party executing same and the pipe line company. And operates as an estoppel in pais, estoppel in fact, as to the party executing same, from recovering a greater sum against the pipe line company than the amount of the interest designated in the division order.

### 6. Oil and Gas—Escrows—Conveyance of Lease Interest in Litigation—Date Effective.

An agreement conveying all right, title, and interest that the grantee may have in a certain oil and gas lease, then the subject-matter of pending litigation, for possession of the leasehold, which is placed in escrow, to be delivered on the final determination of the suit, in the event the determination is favorable to the grantee, in the absence of any express provision to the contrary, takes effect from date of execution.

Error from District Court, Okmulgee County; John L. Norman, Judge.

Action by Millie Petitt and others against Double-O Oil Company and others; the Texas Company, the Sequoyah Oil & Refining Company, and another later being made parties defendant. From the judgment, the two defendants last named bring error, as do other parties by cross-petition in error. Affirmed in part and reversed in part.

John R. Ramsey and Ames, Chambers, Lowe & Richardson, for plaintiff in error The Texas Company.

Moss & Owens, for plaintiff in error Sequoyah Oil & Refining Company.

Geo. B. Rittenhouse, F. A. Rittenhouse, P. T. McVay, John F. Webster, and G. R. Horner, for plaintiff in error C. C. Bennett.

Fred M. Carter and Bruce & Walker, for plaintiff in error Spencer Adams.

J. B. O'Meara and Fred M. Carter, for defendants in error Spencer Adams and J. B. Key.

J. J. Bruce and H. T. Walker, for defendants in error Bruce and Walker.

PER CURIAM. This is a case in which suit was instituted on February 27, 1917, by Millie Petitt, C. J. Petitt and Spencer Adams, against Double-O Oil Company et al. The Texas Company, plaintiff in error, was not then a party to the action. Millie Petitt, a Creek freedman, was the owner of the land in controversy. She had conveyed same to Ella Hadley, and on October 17, 1912, said Ella Hadley executed an oil and gas lease to Double-O Oil Company, which had assigned an interest to each of the other defendants. And subsequently Ella Hadley, joined by her husband, reconveyed said lands to Millie Petitt. The said company and its assigns failed to operate the lease as required by the terms and provisions thereof. And the said Millie Petitt executed a lease to Spencer Adams (one of the defendants in error), and the prayer in the petition is, that the lease held by the Double-O Oil Company and its assigns be declared void and that the defendant be enjoined from interfering with the rights of the said Spencer Adams.

On March 17, 1917, the plaintiffs filed a petition praying for a restraining order preventing the defendants from operating the lease, and on March 19th a temporary restraining order was issued by the county judge. On March 21, 1917, the case was heard by the district judge on application for a temporary injunction, and the defendant entered upon said leasehold and proceeded to develop same. Thereafter, the issues were made up, and on March 29, 1918, the case came on for trial, and on March 28th the court rendered judgment denying the relief sought by the plaintiffs, upholding the lease held by the Double-O Oil Company, and in addition to denying the relief sought by plaintiffs the court adjudged that the lease subsequently given to Spencer Adams was null and void; from which judgment, the plaintiffs appeal to this court. And on the 17th day of May, 1921, the Supreme Court handed down an opinion reversing the judgment of the district court; holding that the lease to the Double-O Oil Company had become void and of no force or effect by reason of the failure of the company and its assigns to comply with the terms and conditions of said lease. Said case is reported in 82 Okla. 13, and in 198 Pac. 616, being case No. 10101. This court reversed the case on the grounds of insufficient evidence and that same was contrary to law, and ordered that the judgment of the trial court be reversed, "and that judgment be entered in favor of the plaintiffs for the cancellation of the lease of the Double-O Oil Company executed October 17, 1912, and that an accounting be had between the parties and the cause remanded with directions to the trial court to take further proceedings therein in accordance with the views herein expressed." After the case was remanded the

plaintiffs in error, the Double-O Oil Company, and its assigns, and C. C. Bennett, filed application for an accounting, in which, for the first time, the Texas Company, the Sequoyah Oil & Refining Company, and the Empire Petroleum Company were made parties defendant. This application recites the decision of the Supreme Court and the filing of the mandate, alleging that one W. E. Sunday had been in possession of the property as the agent for the Sequoyah Oil & Refining Company; that the defendants had extracted large quantities of oil from the land, and alleged that they did not act in good faith, but with full knowledge of the claims of the plaintiffs. Thereafter the Texas Company filed its answer to the application of plaintiffs for an accounting, in which it enters a general denial, and as a further defense states that since the 1st day of July, 1917, it had, from time to time, purchased oil from the lease. That it had not produced oil. That its vendors were in open possession of the premises. That the plaintiffs had never notified it of any claim of right, although they knew it was buying the oil. That it purchased the oil in good faith. And avers that the plaintiffs are estopped from asserting any claim at this time. Said Texas Company also filed an answer to the petition of defendant Bennett for an accounting, in which it pleads certain facts as to knowledge, and the further fact that said Bennett had signed a division order to said company, and alleges that said Bennett is estopped from making any claim against it, the Texas Company. Said company filed an answer to the cross-petition of J. D. Key and cross-petition of Bruce and Walker, in which it sets up the amount of oil which it had received, avers it had purchased the working interest from Sequoyah Oil & Refining Company, and from Wm. Baker, the trustee of Sequoyah Oil & Refining Company. That at all times its vendors were in peaceable possession of the premises, were holding same under a lease which had been upheld by a decree of the district court; avers that the Texas Company had no part in the taking possession of the premises, but, in good faith, believed that its vendors had a valid title, and further avers that said lands were in oil producing territory; that lands adjoining it were producing oil and, unless wells had been drilled upon the land involved, its oil deposits would have been drained to a very large extent, by offset wells on adjoining land, and that had the land not been drilled and oil produced, the owners thereof would have been greatly damaged by reason of the offset wells on

adjoining property and depreciation in price of oil. That the owners had been benefited by the drilling and marketing of said oil, and that its vendors had exercised reasonable care and skill in the development of the property. That the price paid by them for drilling, development, equipment, and maintenance had been fair and reasonable and necessary, and that even though the court should hold the Texas Company liable at all in the premises, it should only be held liable for the market value of the oil at the time it was produced and purchased by the Texas Company, less the cost and expense incurred by the lessee in producing the oil; and prays that its codefendants, Sequoyah Oil & Refining Company, and Wm. Baker, trustee, be required to disclose to the court the exact cost of producing and marketing the oil.

This is a statement of the facts as concerning the interest of the Texas Company and the Sequoyah Oil & Refining Company, as against the defendants Millie and C. J. Petitt. As to the other defendants in error, the record further discloses that on the 6th day of September, 1916, Spencer Adams employed, by written contract, J. J. Bruce and H. T. Walker, as attorneys, to prosecute the cause of action and to represent his interest in the cancellation of the leasehold by the Double-O Oil Company, which contract provided for an undivided one-third interest in said lease, and a recovery of the proceeds therefor, as attorney's fees to said Bruce and Walker. That on the 2nd day of December, 1916, said Adams, for valuable consideration, made, executed, and delivered to J. B. Key an assignment conveying an undivided one-half interest in said lease, subject to the attorney's contract with Bruce and Walker. That on the 24th day of October, 1917, and during the pendency of the litigation, Adams entered into an escrow agreement with C. C. Bennett, by the terms of which agreement Spencer Adams agreed to sell to C. C. Bennett, all his right, title, and interest in said oil and gas mining lease for the consideration of $15,000, to be paid upon the condition that said Adams was successful in the suit then pending. Said contract and check for $15,000, given by Bennett, were placed in escrow in the First National Bank at Muskogee, to be held by said bank pending the determination of the suit. And on or about the 1st day of June, 1921, Spencer Adams advised C. C. Bennett of the decision of the Supreme Court in which it had been decided that the lease held by the Double-O Oil Company was void, and that the Spencer Adams lease was a valid and subsisting oil and gas

lease upon said property, and suggested to said Bennett that the escrow papers might be delivered and the check for $15,000 be paid to said Adams, to which suggestion the said Bennett demurred, for the reason that there had been an agreement made between Adams and Bennett to the effect that $1,000 should be deducted from the $15,000 as attorney's fees to Geo. B. and F. A. Rittenhouse. Thereafter Spencer Adams drew a draft of $14,000, the amount Bennett said he owned, and same was returned for the reason that the bank upon which it was drawn stated that Bennett refused to pay said draft and to take the assignment of the lease in question, and the assignment has never been delivered for the reason Bennett has refused to pay the purchase price. And in the application of the said C. C. Bennett for an accounting filed on July 22, 1921, he also asked for specific performance against Spencer Adams, J. B. Key. J. J. Bruce, and H. T. Walker, praying that he be declared to be the sole owner of said lease and entitled to the proceeds therefrom, and to the right to prosecute said accounting in his own name by virtue of the escrow agreement and assignment of the oil and gas lease, to which application and prayer for specific performance the said Bruce and Walker and J. B. Key filed their answers and asked that their rights be determined in accordance with the terms of the contract, upon which they rely, and Spencer Adams answered by general denial and failure to pay purchase price. And on April 8, 1922, the matter came on for hearing before the court and judgment was rendered in favor of Bruce and Walker for an undivided one-third interest in said lease and the proceeds thereof, and the judgment in favor of J. B. Key for an undivided one-third interest in said lease, being one-half of the interest owned by the said Spencer Adams, and a judgment in favor of C. C. Bennett for the remaining one-third interest in said lease and for the proceeds thereof, from and after the 24th day of October, 1917, by reason of said escrow agreement between said Adams and Bennett, and also rendered a further judgment in favor of Spencer Adams and against C. C. Bennett in the sum of $6,500 by reason of the escrow agreement, and judgment was rendered in favor of Adams against the Texas and Sequoyah Companies for one-third of the proceeds of said oil and gas produced from said lease prior to the 24th day of October, 1917, the date of making said escrow agreement.

From that part of the judgment decreeing that Bruce and Walker and J. B. Key

were each one-third owners in said lease and the proceeds therefrom. C. C. Bennett appeals; from that part of the judgment holding that C. C. Bennett is entitled to an undivided one-third interest in said lease and to the proceeds therefrom from October 24, 1917, and from the judgment in favor of Spencer Adams against C. C. Bennett for $6,500, Spencer Adams and C. C. Bennett both appeal.

The lease executed by Ella Hadley to the Double-O Oil Company, under which the Empire Petroleum Company and the Texas Company claim the right to purchase the oil, and the Sequoyah Oil & Refining Company and W. E. Sunday were operating the lease, having been declared void by this court when this case was formerly before it (being No. 10101), and same being remanded to the trial court for an accounting, the lease to the Double-O Oil Company having been declared null and void, leaves but one question for consideration at this time, so far as the Texas, the Empire Petroleum Company and Sequoyah Oil & Refining Company are concerned, that of whether or not they were purchasers of the oil in good faith, and were operating said lease in good faith. The lease under which they were pretending to operate being void, the only question necessary to determine is that of whether or not they were in good faith, and whether or not they had notice of the other outstanding lease, and the interest of adverse parties, and whether or not they were justified in relying on the lease under which they operated.

The record discloses that at the time they went upon the land in controversy to begin development, the defendants in error Adams and Bruce and Walker filed a petition and asked that they be enjoined and restrained from entering and operating on said land, and vigorously protested against the entry, and called attention to their rights, and the original contract, under which they were attempting to operate, executed by Ella Hadley, and which had been approved and executed by Millie Petitt, subsequent to the reconveyance of the land to her by Ella Hadley, was clear and unambiguous, and men of reasonable prudence and ordinary business sagacity should have known by a perusal of said contract and the terms and provisions thereof that it had expired, and was of no force or effect at the time they attempted and did begin operations on said land.

The trial court found that the said company went upon said land with notice of the rights of the adverse parties, and that

the Texas and Empire Petroleum Companies were not purchasers of the oil in good faith, and we think the preponderance of the evidence sustains the judgment of the trial court. The court also found that they were not acting in good faith and were not entitled to recover compensation for the expenditure incurred by them in development and operations of the lease. And while there may be some question as to the correctness and propriety of this holding, as a matter of law, this court has established the rule followed by the trial court and repeatedly held that "no recovery can be had for such expenditure, except where good faith is shown by the parties entering upon and developing oil and gas land, and purchasing the oil run therefrom, under void contracts." And while it may seem inequitable to take advantage of the expenditure and labors of another and appropriate the benefits derived from such labor, yet we think the better rule has been followed by this court, and we find no reason for changing same at this time. Probst v. Bearman, 76 Okla. 71, 183 Pac. 886:

"Where oil and gas is purchased pending a suit to cancel the lease under which same is produced, by parties having knowledge of such litigation and of the purpose of the adverse party to insist upon his rights, the statute of limitations does not begin to run against the right to compel such purchasers to account for the oil and gas until the final determination of the suit canceling the lease."

"The costs of improvements and operations incurred by the holder of an oil and gas lease, purchased pendente lite and with actual knowledge of the adverse claim, and of the purpose of such party to insist upon his rights and to obtain redress for the invasion of such rights, will not be deducted, when requiring such holder to account to the successful adverse party for oil and gas produced and sold from the premises."

As to the question raised by the appellants as to the correctness of the judgment of the trial court in holding that the attorneys, Bruce and Walker, were entitled to recover a one-third interest in the leasehold, it is not, we think, well taken, and that same is a correct adjudication of that question. The said Bennett evidently knew, or was possessed of facts sufficient to put him on inquiry, as to the rights of these parties. And while he contends that the said Bruce and Walker were estopped from asserting their rights at this time, for the reason that they were present and made no contention as to their rights at the time he purchased the interest of the said Spencer Adams, we do not find this sufficient to

base and estoppel on, in view of the fact that he knew that they had some interest, and consequently it was incumbent upon him to inquire and ascertain the extent of the interest held by them. And the record discloses no evidence or testimony offered on the part of Bruce and Walker to cancel in any way their interest.

Flesner v. Cooper, 62 Okla. 263, 162 Pac. 1112:

"The essential elements of an 'equitable estoppel' are: First, there must be a false representation or concealment of facts. Second, it must have been made with knowledge, actual or constructive, of the real facts. Third, the party to whom it was made must have been without knowledge, or the means of knowledge, of the real facts. Fourth, it must have been made with the intention that it should be acted upon. Fifth, the party to whom it was made must have relied on or acted upon it to his prejudice. The representation or concealment mentioned may arise from silence of a party under imperative duty to speak; and the intention that the representation or concealment be acted upon may be inferred from circumstances."

Hickman v. Davis, 56 Okla. 483, 155 Pac. 1170:

"In order for the silence of a party to constitute an estoppel against him, it must have occurred under such circumstances as to have made it his imperative duty to speak, and the party in whose favor the estoppel is invoked must have been misled into doing that which he would not have done but for such silence."

This brings us to the question raised by the assignment of error on the part of Spencer Adams, excepting to the findings and judgment of the court decreeing that the plaintiff Adams was entitled to the sum of $6,500 for the interest conveyed to C. C. Bennett, rather than the sum of $15,000, the amount specified in the escrow agreement, less $1,000, which by agreement of the parties was to be paid as attorney's fees. This assignment of error, in our judgment, is well taken. For, regardless of what interest may have been conveyed by Adams to Bennett, the consideration to be paid was unquestionably $15,000. We cannot agree with the line of reasoning followed in this portion of his judgment, and hold that the plaintiff Adams is entitled to recover the full amount of the consideration expressed in the agreement, less the $1,000 which was paid by agreement of the parties as attorney's fee.

"An assignment in writing of 'all our right, title and interest in and to a certain leasehold for oil and gas mining purposes'

does not amount to a warranty of title.

"Under such an assignment the assignees merely take whatever interest the assignors have in the leasehold, and, in the absence of fraud, assume the hazards arising out of failure of title." Moore et al. v. White et al., 75 Okla. 171, 182 Pac. 684; Tupeker v. Deaner. 46 Okla. 382, 148 Pac. 853.

We think that the question raised by the assignment of error on the part of C. C. Bennett is not well taken, wherein he excepts to the judgment and decrees of the court holding that the intervener, Bennett, was only entitled to receive one-third of the proceeds produced by said leasehold from and after the 24th day of October, 1917, the date on which said escrow agreement was executed, said escrow agreement being as follows:

"C. C. Bennett's Exhibit 6.
"Agreement.

"This agreement made by and between Spencer Adams, of Okmulgee, Okla., party of the first part, and C. C. Bennett, of Tulsa, Okla., party of the second part.
"Witnesseth.

"That the party of the first part is the legal holder and owner of an oil and gas lease made by Millie Petitt and C. J. Petitt on the 2nd day of August, 1916, to the party of the first part on the northeast quarter of section nine (9) township fourteen (14) north, range fourteen (14) east, in Okmulgee county, Okla.

"Whereas, the party of the first part has this day assigned and set over all the interest and estate which the said first party may have in the above described property to the said second party for the consideration of $15,000 as follows, to wit:

"The said second party has this day given his check for said amount upon the Producers' State Bank of Tulsa, Okla., and the assignment of said lease upon the above property by the said first party and the check aforesaid by agreement of the parties, is deposited in the First National Bank of Muskogee, Okla., and there held until the final determination of the suit. The suit for cancellation of the former oil and gas lease upon said property is now pending in the district court of Okmulgee county, Okla., the style of which is, Millie Petitt and Spencer Adams v. The Double-O Oil Company et al., No. 4850.

"It is agreed that in case the party of the first part fails to have canceled and set aside the former oil and gas lease upon the above-described property, then this agreement is null and void and both parties will be thereby released from the same and the check for $15,000 above mentioned, will be returned to the party of the second part.

"The final determination of the suit above

referred to means that if the suit is finally determined in the district court of Okmulgee county, and no appeal is taken therefrom, or if the suit is settled by compromise of all parties, or if either party appeals to the Supreme Court of the state of Oklahoma, and the final decree of said court is the final determination of the cause hereinbefore mentioned.

"It is further agreed by and between the parties hereto that if the court should finally determine that the former oil and gas lease be canceled, that the first party to the contract should pay or must pay any or all improvements et cetera upon the land above described, then the second party to this contract agrees to pay the amount required by the decree of the court aside from the $15,000 this day placed in escrow. Any compromise of said suit must be agreed to by the parties hereto.

"This agreement is to be binding upon the parties hereto, their heirs and assigns and neither party cannot withdraw same without consent of the other.

"In Witness Whereof, we have hereunto set our hands this the 24th day of October, 1917.

"Spencer Adams.
"C. C. Bennett."

From a careful consideration of the agreement, we believe that it conveyed all the interest of Spencer Adams in said leasehold. The granting clause of said contract is as follows: Adams assigned all the interest and estate, which he may have in the above described property, referring to a minute description of the leasehold. The consummation of the contract placed in escrow is made dependent upon a favorable decision of the case, then pending, in favor of Adams and the subject-matter of the contract being then involved in litigation, and the interest, if any, to be conveyed was to be determined by the final consummation of the suit. We are inclined to the opinion that the escrow agreement should be construed to take effect from the date of its execution and not from the date of delivery.

Defendant in error Adams makes the contention that the escrow agreement in this case should take effect from date of delivery, and cites numerous authorities in support of that contention, and calls special attention to the case of McMurtrey v. Bridges. 41 Okla. 264, 137 Pac. 721, the syllabus of which is as follows:

"A deed of conveyance of real estate placed in escrow when made and duly delivered to the grantee at a subsequent date, when there has been a compliance with the terms of the escrow agreement, will ordinarily take effect at the time of such delivery and not before."

And calls special attention to the case of Stone et al. v. Duvall et al., 77 Ill. 476, and we concede that this is the general rule; but under the terms of the agreement here under consideration and the nature and character of the property involved, and the condition that existed at the time of the execution of this agreement, we think it comes within the exceptions to the general rule. 10 R. C. L., art. 21, 640. The grantee in said contract. C. C. Bennett, takes the other horn of the dilemma and contends that the contract should be given a retroactive effect and cover everything pertaining to the leasehold, together with the oil that had been extracted therefrom prior to the execution of the contract under consideration, on the theory that the oil which had already been produced was a part of the subject-matter in controversy in the suit, the final determination of which would give life to the escrow agreement, but in view of the fact that oil, after it has been extracted from the soil, becomes personal property and is no longer attached to or any part of the leasehold, we are inclined to the opinion that in the absence of any specific provision in the contract of assignment of the leasehold, that it could not be construed to cover oil which had been formerly produced from the leasehold. The contract only conveys the interest of Adams in the leasehold, and we think the trial court was correct in its judgment in holding that Adams was entitled to judgment against the Empire Petroleum Company for $407.32. and the Texas Company for $7,101.85, the value of the oil produced from said leasehold prior to the execution of the escrow agreement, to wit, 24th day of October, 1917.

This disposes of all the issues raised, save and except that raised by the Texas Company, in their assignment of error, as to the effect of the division order executed by C. C. Bennett and the Sequoyah Oil & Refining Company, and delivered to the Texas Company, wherein it is stated that 7-8 of the oil runs belongs to and is the property of the Sequoyah Oil & Refining Company, and 1-8 belongs to and is the property of C. C. Bennett. The complaint as to this assignment of error, we think, is well taken. The argument made by the defendant in error Bennett to the effect that his act in executing the division order is not such an act as will create an equitable estoppel is not in point. In our judgment, a division order is equivalent to a transfer, assignment, or conveyance of the interest held by the different parties executing the division

order. Plaintiff in error cites the case of Headley v. Hoopengarner (W. Va.) 55 S. E. 744, and the third paragraph of the syllabus in that case, which is as follows:

"When a lease is given for the purpose of mining and operating for oil, in consideration of one-fifth of one-eighth of all the oil produced being delivered to the lessor as royalty; and where in a division order executed by all the interested parties, fixing and defining their relative interest in the oil produced, the lessor agrees to accept one-fifth of one-sixteenth, and directs the delivery to him of that amount as his portion, he will be estopped to claim more than that amount, as against the parties in the lease subsequently thereto."

If the law of estoppel applies, it would be an estoppel in "pais", otherwise denominated "estoppel in fact," as defined in Bigelow on Estoppel (2nd Ed.) page 387. But we think that in dealing with instruments such as a division order it is not necessary to invoke the law of estoppel: the party is bound by his acts in the same manner as he is bound by reason of the execution of a promissory note or mortgage, or other instruments of writing. In the case of Childers v. Neely, 47 W. Va. 70, 34 S. E. 828, 81 Am. St. Rep. 777, 49 L. R. A. 468, we find the following rule announced:

"Where mining partners have divided the property or production of the business, giving each his share in severalty, and separating it from the balance, no lien exists on the property or production so actually divided in favor of one or more partners, who made advances of money or supplies for the firm, over and above their just proportion; and the execution between the partners of 'division orders,' whereby the share of the production of the wells is set apart in the pipe lines to each partner. such severance precludes a partner who has made such advances from claiming a lien against the production so divided." Archer's Law and Practice in Oil and Gas Cases (A-86) 640, section 15.

This was a controversy wherein certain members of an oil and gas mining partnership were attempting to subject the interest of another partner to the payment of partnership indebtedness, after a division order had been executed by all of the parties acknowledging and severing the interest of each. And in discussing the issues involved the court says in the body of the opinion:

"That the property which still remains undivided as the property of the entire partnership, could only be subjected, in a controversy between partners, to the payment of partnership indebtedness, and that the execution of the division order oper-

ates as a conveyance and as a division and separation of so much of the partnership property as is involved in the division order and that it become the separate and distinct property of the individual partners and was no longer subject to the partnership indebtedness."

We think, under this rule, which is evidently a correct one, C. C. Bennett would be bound by his acts in signing and executing the division order in connection with the Sequoyah Oil & Refining Company, which was delivered to the Texas Company, and while same was not, in fact, executed until in October, after the greater portion of the oil in controversy had been run by the Texas Company, it was dated back until May of the same year, 1917, at which time the first run of oil was made by the Texas Company. This, so far as the record discloses, was done by agreement, and was satisfactory at the time to all parties concerned. Hence, we see no reason why the defendant C. C. Bennett is not bound by this division order; and therefore hold that the court was in error in finding that Bennett was entitled to recover against the Texas Company for the full amount of his one-third interest. It is true that in the division order Bennett represented himself to be the owner of and claimed one-eighth of the entire interest conveyed by the lease to Adams, while in fact and in accordance with the judgment of the lower court, which we think correct, he only had and was entitled to a one-third interest in said lease, and having executed a division order in which he recognized and admits that the Sequoyah Oil & Refining Company, from whom the Texas Company was taking the oil, was entitled to seven-eighths, he is bound by the terms of same.

We, therefore, affirm the judgment of the trial court in every particular, except wherein judgment is rendered for Spencer Adams for $6,500, in which particular we reverse the same and render judgment for $14,000. And judgment on supersedeas bond having been prayed for, the same is granted and judgment is hereby rendered against all bondsmen on supersedeas bonds in the amounts as affirmed in this opinion, for which they are liable under the terms of their bonds respectively.

McNEILL, C. J. (dissenting). I am unable to agree with the opinion in the above entitled cause, for the reason I do not believe the record supports the following portion of the opinion:

"The trial court found that the said company went upon said land with notice of the rights of the adverse parties, and that the Texas and Empire Petroleum Companies were not purchasers of the oil in good faith. and we think the preponderance of the evidence sustains the judgment of the trial court. The court also found that they were not acting in good faith and were not entitled to recover compensation for the expenditure incurred by them in development and operations of the lease. And while there may be some question as to the correctness and propriety of this holding, as a matter of law, this court has established the rule followed by the trial court and repeatedly held that 'no recovery can be had for such expenditure, except where good faith is shown by the parties entering upon and developing oil and gas land, and purchasing the oil run therefrom, under void contracts.' And while it may seem inequitable to take advantage of the expenditure and labors of another and appropriate the benefits derived from such labor, yet we think the better rule has been followed by this court, and we find no reason for changing same at this time."

The record disclosed the plaintiffs introduced their evidence, some of which went to the effect the companies were not in good faith developing the premises, and knew their title was defective or void; this was material for the purpose of ascertaining whether the company should be allowed the costs of producing the oil; but the court refused to permit the defendants to introduce any contrary evidence. or evidence to support their contention that they acted in good faith believing they had a valid lease. The court did permit a few questions to be answered to support the contention that the defendant company entered upon the land and developed it upon the advice of George S. Ramsey. The record then disclosed that upon three different occasions the court stated as follows:

"I think that question of good faith has been absolutely closed by the opinion of the Supreme Court. The objection to the introduction of the testimony as to the offsetting of the oil production by the cost of the production and operation is, therefore, sustained."

And again the court on page 627 stated as follows:

"Which objection the court sustained because of the holding of the Supreme Court of this state in this case, and the other authorities which have been cited."

The court on page 655, case-made, stated as follows:

"By the Court: I would let you do that if it was not for the decision of the Supreme Court; it says by the exercise of proper diligence he could have known this.

"By Mr. Owen: You sustain the objection to the offer?

"By the Court: Sustained because of the holding of the Supreme Court in this case."

To my mind this is conclusive, when taken with the rest of the record, the trial court refused to permit the defendants to introduce their testimony to establish the question of whether they had acted in good faith in producing the oil, believing that they had a valid lease. The court says upon three different occasions that the former opinion of this court precluded him from hearing that defense. The former opinion of this court does not so hold, nor is the opinion in this case upholding the judgment of the lower court based upon the theory that the question was decided in the former opinion, but the opinion goes upon the theory that was an issue in the trial and the finding of the court was not clearly against the weight of the evidence. To me such a judgment cannot be proper, when the court below refused to permit the parties to introduce their entire defense upon this question. The record does disclose that prior to the time the defendant developed the premises, the plaintiff herein sought to enjoin it from drilling a well for the reason that plaintiff had a prior and valid lease. The district court refused that injunction. The case was then tried to the district court, and the court held the defendant company in this action had a valid lease and it was prior to the former lease. This court reversed that finding of the trial court. We are then confronted with this proposition. The trial court refused to enjoin the defendant company from drilling a well and held, in the action to determine which lease was valid, that the defendant company's lease was prior and valid. When that decision was reversed and upon an accounting, it is held that the defendant company acted in bad faith. This means that they had no reasonable grounds to believe they had a valid lease. To me this seems peculiar that the claim of the defendant company was sufficient for the trial court to hold its lease was valid and now hold there was no merit in the defendant's claim, and they did not actually believe that they had any valid title, although the district judge had held their title was valid and subsisting. There is another reason why in my mind the former opinion cannot apply to the Texas Company, and other purchasers of the oil, for the reason they were not parties to the former appeal nor parties in the lower court. They could have been made parties by supplemental pleadings, but the plaintiff did not see fit to make them parties in the original action. Not having made them parties in the original

action, they cannot now contend that they are bound by the judgment to which they are not made parties.

For the reasons stated, I am unable to agree with the opinion, and therefore dissent.