## MERSHON v. ESSLEY et al.

No. 34147.   April 3, 1951.

Rehearing Denied June 19, 1951.

Application for Leave to File
Second Petition for Rehear-
ing Denied July 3, 1951.

*233 P. 2d 293.*

Wayne W. Bayless, Oklahoma City, and I. D. Moseley and Robert W. Raynolds, Tulsa, for plaintiff in error.

F. A. Bodovitz, Tulsa, for defendants in error J. L. Essley and W. G. Mouser.

WELCH, J.   Milton Mershon commenced this action against J. L. Essley, W. G. Mouser and Champlin Refining Company, a corporation, to establish his claim of ownership of an undivided one-sixth interest in a certain oil and gas lease, and to compel the persons named as defendants to make legal conveyance to the plaintiff of such one-sixth interest and to compel said persons to make accounting as to proceeds derived from said lease. The plaintiff prayed that receiver be appointed and that Champlin Refining Company be restrained from making payment of money to its codefendants for its purchase of oil from the lease pending the action.

The Champlin Refining Company answered that it had been purchasing crude oil from the leased premises from the record owner of the lease and as to the amount paid therefor and stated that it had no knowledge of plaintiff's claim.

The defendant Mouser disclaimed any interest in the lease and acknowledged conveyance of his interest in the lease to Essley at a time prior to the development and production of oil from the premises by Essley.

The defendant Essley claimed ownership of the entire leasehold estate; that he was a joint purchaser thereof with the plaintiff and the defendant Mouser; that subsequently he purchased a one-half interest from Sunray Oil Corporation that had been assigned to Sunray by Mouser as trustee of said joint purchasers; that thereafter the said Mouser executed an assignment to him of the remaining one-half interest which represented a relinquishment and gift from Mouser and the plaintiff of their remaining interest in the lease.

At the beginning of trial it was stipulated that the issues should not include an accounting; that if an accounting was found proper the same should be tried to the court at a subsequent date.

In undisputed evidence it was shown that Mershon, Essley and Mouser joined in the purchase of various oil and gas leases. The lease in question was so

purchased and was taken in the name of Mouser, as lessee. Mouser wrote a letter to each of the other parties acknowledging their participation in the purchase and their ownership each of an undivided one-third interest in the lease. Thereafter, and agreeable to the other parties in interest, Mouser made an assignment of an undivided one-half interest in the lease to Sunray Oil Corporation in consideration of a contract by Sunray to drill on the leased premises. It was agreed that if production was had the Sunray would retain all of the lessee's part of the oil and gas produced until the costs of operating and equipping had been recovered, and thereafter net proceeds from production would be divided, fifty-per cent to Sunray and fifty-per cent to Mershon, Mounser and Essley. Sunray drilled a well productive of oil and water. Thereafter Essley purchased the Sunray interests in the well and equipment and the leasehold estate. Thereafter Mouser executed an assignment of an undivided one-half interest in the lease to Essley. Essley thereafter caused other wells to be drilled on the leased premises which wells produced oil.

Mouser gave testimony to the effect that after the Sunray well came in that it produced oil in such quantity as to leave doubt that the well would in the future pay operating costs; that Essley proposed purchase of the Sunray interest and the making of further expenditure on the well in effort to increase its production; that witness advised Essley that he had no desire to participate in purchase of the Sunray interest and was agreeable to Essley's taking over the Sunray contract and interest in the land; that after acquiring the Sunray interest Essley proposed the drilling of other wells on the leased premises; that witness advised him that he didn't care to join in any further expenditure in development of the lease and would surrender and transfer his interest to Essley if Essley so desired. That Essley told him of like proposals of development to Mershon, and that

Mershon had declined and had offered to surrender his interest to Essley should Essley so desire; that witness on the basis of surrendering his interest in the lease to Essley, and on the basis of what Essley had told him of Mershon's desire to give Essley his interest, then executed assignment to Essley of the remaining one-half interest.

Essley testified in substance as Mouser and that Mershon had declined a proposition of joining in drilling or making expenditure in development of the lease, and had told him that he could have his interest in the lease and to have Mouser make assignment and send him such letter or writing as would evidence the release of his interest to witness, and that Mershon would sign the same; that witness related the conversation with Mershon to Mouser and Mouser thereupon executed assignment; that witness thereafter became engrossed in development of the lease and failed to secure any writing or memorandum from Mouser; that witness made large expenditures in drilling three wells on the premises and in attempt to increase the Sunray well; that he visited or talked with Mershon from time to time and told him of his progress in drilling; that Mershon at no time after the assignment of interest by Mouser and during the subsequent drilling operation made any claim of interest or until after producing wells had been brought in. That witness had made the expenditures in development of the lease in reliance upon Mershon's oral surrender and gift of his interest, and the assignment of all interest as secured from Sunray and Mouser.

The plaintiff, Mershon, denied any knowledge of Essley's activities on the leased premises until after the wells had come into production, and denied any acknowledgment in conversation or otherwise of relinquishment or release or gift of his interest in the leasehold estate.

At the conclusion of the evidence, a judgment and decree was entered in

favor of the defendants, the plaintiff was denied any relief or judgment, and title to the lease involved was quieted in the defendant Essley. The plaintiff has appealed.

In discussion of the issues in this appeal, hereinafter, our reference to the defendant will refer to Essley.

Argument for reversal is presented by the plaintiff under the following proposition:

"The claimed oral conveyance of Mershon's one-sixth interest in the lease to Essley is in contravention of the Statute of Frauds and therefore invalid and unenforceable as a matter of law."

15 O. S. 1941 §136, subd. 5, provides:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent.

" . . .

"5. An agreement . . . for the sale of real property or of an interest therein . . . ."

In Harris v. Tucker, 147 Okla. 210, 296 P. 397, said the court:

" . . . an agreement for the sale of real property or any interest therein is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party to be charged, and an oil and gas mining lease is such an interest as is contemplated by the statute. Woodworth v. Franklin, 85 Okla. 27, 204 P. 453."

In 49 Amer. Jur., Statute of Frauds, §153, it is stated:

"The provisions of the statute of frauds relating to estate and interests in land are equally binding on courts of equity and courts of law, and apply to equitable as well as to legal estates. A contract for the sale of lands to which the seller has only an equitable title or an equitable estate must be in writing. Oral contracts for the sale or transfer of equitable estates, even more than those embracing legal estates, are exposed to the mischief which the statute was designed to remedy. . . ."

It is well settled in this state that an interest in an oil and gas lease is such an interest in real property as is contemplated by the statute, supra. J. L. Crump & Co. v. Mails, 111 Okla. 160, 239 P. 143, and Black v. Wickett, 146 Okla. 191, 293 P. 782, and cases, supra.

We adhere to the principle that oral contracts for the transfer of equitable estates are exposed to the mischief which the statute was designed to remedy, and hold that the provisions of the statute supra apply to equitable as well as to legal estates.

Herein, undisputedly, the plaintiff was the equitable owner of an undivided one-sixth interest in the lease involved and there is no evidence that he ever subscribed to any note, memorandum or other writing in transfer of such interest. In such circumstances, the plaintiff has shown a right to have his title quieted and a right to the benefits of ownership of such interest.

The judgment as rendered in the trial court rests upon a finding of the gift of plaintiff's interest in the lease and a giving effect to the parol gift as asserted by the defendant.

In support of the judgment the defendant presents argument under the following proposition:

"A parol gift of land accompanied by possession by the donee, when the donee has been induced either by the gift, or the promise of the gift, to make valuable improvements to the land of a permanent nature, takes the case out of the statute of frauds."

Hereunder, defendant cites Johnson v. Kimmell, 172 Okla. 315, 44 P. 2d 978, and the rule set forth in the fourth paragraph of the syllabus, as follows:

"The general rule is that a parol gift of land, accompanied by possession by the donee, will be enforced in equity when the donee has been induced, by the promise of the gift to make valuable improvements to the land, of a permanent nature, and to such an extent as to render a revoca-

tion of the gift unjust, inequitable, and a fraud upon the donee. Such a state of facts will take the case out of the statute of frauds, and entitle the donee to enforce specific performance of the gift, and to defend his possession against the donor or his heirs. It must be shown, however, that possession was given and taken in pursuance of and in reliance on the gift, with the knowledge and consent of the giver, and that such possession was exclusive."

Other cases of like tenor and wherein the above rule was applied are cited.

Defendant directs attention to the evidence concerning his entry on the leased premises, and his expenditure of large sums in the drilling of wells on the leased premises and after the date stated in his testimony as the time of the parol gift of plaintiff's interest in the lease. The defendant testified that he so acted in reliance on the validity of the plaintiff's gift to him of plaintiff's interest in the lease.

It is to be noted that such acts of the defendant were consistent with the rights and privileges he held without the alleged parol gift of the plaintiff's interest in the lease. Undisputedly, without acquirement of plaintiff's interest, the defendant was a co-owner of the lease, owning five-sixths thereof. As such he was tenant in common with plaintiff as to the leased premises and with the right and privilege of entering the leased premises and sinking wells thereon.

As such cotenant he has equal right to recover from the lease his expenditures in improvement of the lease as if he were the sole owner of the lease. The basis for the general rule above quoted is fraud upon the donee arising in revocation of a parol gift under circumstances that the parties may not be placed in their original position or made whole, and herein no such consequences are apparent.

In Moody v. Wagner, 167 Okla. 99, 23 P. 2d 633, in the fourth paragraph of the syllabus said the court:

"A tenant in common, producing oil and gas from the common property, is liable to account to his cotenants for their proportionate share of the market value of the oil and gas produced, less the reasonable and necessary costs of developing, extracting and marketing the same."

Under this sound rule the defendant may recover his expenditures in development of the lease in equal amount as if vested with the whole leasehold estate.

In Earp v. Mid-Continent Pet. Corp., 167 Okla. 86, 27 P. 2d 855, said the court:

" . . . It is conceded that the owners of undivided portions of oil and gas rights in and under real estate are tenants in common. Each of such cotenants may enter upon the premises for the purpose of exploring for oil and gas, and may drill and develop the premises. However, one cotenant cannot exercise that right to the exclusion of the other, and each may exercise the same right and privilege with reference to the common property. Upon the discovery of oil and gas upon the premises, the producing cotenant must account to the nonconsenting or nonproducing cotenant for his pro rata share of the net profits apportioned according to the fractional interest of such cotenant, the net profits being determined by deducting from the market value of the oil or gas produced, the necessary expense of developing, extracting, and marketing the same. . . ."

It does not appear that defendant will sustain loss as a result of having acted in reliance upon a gift to him of the plaintiff's interest. It is not apparent that the defendant will sustain a loss other than of such profits as might be derived from ownership of the plaintiff's interest. Such does not present an equitable consideration as will uphold specific performance of the asserted gift and vest defendant with plaintiff's equitable interest, and same is not a sufficient basis for avoiding the statute or frauds.

We find no sufficient evidence for application of the cited rule from the

Kimmell case, supra. We find the evidence insufficient to sustain the trial court's finding and judgment for the defendant.

The judgment is reversed. The cause is remanded to the trial court, with directions to enter judgment for the plaintiff quieting his title to an undivided one-sixth interest in the lease involved, and for an accounting.

ARNOLD, C.J., LUTTRELL, V.C.J., and CORN, DAVISON, and O'NEAL, JJ., concur.