### ESSLEY et al. v. MERSHON.

No. 35534.

Supreme Court of Oklahoma.

Sept. 22, 1953.

Rehearing Denied Oct. 13, 1953.

Villard Martin, Garrett Logan, F. A. Bodovitz, Tulsa, for plaintiffs in error, J. L. Essley and Thomas E. Berry.

Nathan Scarritt, E. S. Champlin, D. J. Owen, Jr., Enid, for plaintiff in error, Champlin Refining Co.

Wayne W. Bayless, Oklahoma City, I. D. Moseley, Robert W. Raynolds, John M. Wheeler, John M. Wheeler, Jr., Tulsa, for defendant in error, Milton M. Mershon.

DAVISON, Justice.

This is an action between cotenants under an oil and gas lease covering some one-hundred sixty acres of land in Noble County, Oklahoma. It was brought by Milton M. Mershon, as plaintiff, against J. L. Essley, his cotenant and the Champlin Refining Company, the purchaser of the oil, as defendants, to establish and quiet his title to an undivided one-sixth interest in the leasehold estate and for an accounting by Essley of the income derived from the oil production from the premises. The issue first tried was that of title and the judgment rendered thereon was brought here for review. Mershon v. Essley, 204 Okl. 660, 233 P.2d 293, 298. Therein it was ordered that the cause be remanded "with directions to enter judgment for the plaintiff quieting his title to an undivided one-sixth interest in the lease involved, and for an accounting." This appeal involved the proceedings after remand. The parties will be referred to as they appeared in the trial court.

A brief summary of the facts presented in the first appeal is necessary as a background for the facts and issues herein. The plaintiff, Mershon, the defendant, Essley, and one Mouser purchased the oil and gas lease in controversy, in the name of Mouser, as lessee. Thereafter, on November 22, 1944, a contract was entered into whereby the Sunray Oil Corporation, in consideration for the assignment to it of an undivided one-half interest in said lease, agreed to develop and operate the property, to be reimbursed for the expenses thereof from the proceeds from the oil produced. The company, after drilling one well from which oil and water were produced, sold its interest in the lease to the defendant, Essley, rather than to expend more money in an effort to make the well more productive. Mouser, not interested in joining the defendant in further development gave his interest in the lease to him and executed an assignment of the remaining one-half interest in the lease to him, Essley. Thus, the entire legal title to the lease was in said defendant. It was the contention of Essley that the plaintiff, Mershon, also gave his interest in the lease to him, Essley. The effect of the decision of this court on the first appeal was to sustain Mershon's denial of a valid gift. The lease was, then, equitably owned, one-sixth by Mershon and five-sixths by Essley, although the entire legal title was in the latter.

Following his acquisition of the Sunray interest (½) and the Mouser interest (⅙), Essley further develped the property by

drilling two more wells making a total of three, one on each of three ten acre tracts. Essley then contracted with one Thomas E. Berry to develop the remaining one-hundred thirty acres. Five more wells, numbered 4, 5, 6, 7, and 8 were drilled under the provisions of said contract.

After the cause was remanded, following the decision on the first appeal, judgment for plaintiff, in harmony with the mandate, was rendered by the trial court on August 6, 1951, in which judgment or order, Essley was directed to render an account of receipts and costs in the development and operation of the property. The account was prepared and filed by Essley, objections thereto were filed by Mershon and a trial of the issues so formed was had. Intermediate the filing of the report and the objections, Mershon moved to make Berry a party defendant. The motion was granted and at the time of trial, November 8, 1951, Berry had regularly answered. In the account, the hearing held thereon and the resulting judgment, Essley's operations in connection with wells 1, 2, and 3 were segregated and considered separately from the operations wherein Berry was interested, being of wells 4, 5, 6, 7, and 8. The judgment on the development and operation of wells numbered 1, 2, and 3 approved defendant's account and was for plaintiff in the amount of $8,450.02, from which plaintiff has appealed. The judgment on the development and operation of wells numbered 4, 5, 6, 7, and 8 disapproved defendant's account and was for plaintiff in the amount of $52,728.33 from which defendants have appealed. The plaintiff below appears here as defendant in error, and cross-petitioner in error, the defendants as plaintiffs in error.

Plaintiffs in error argue that the former decision in this case should be reversed because gross and manifest injustice was done by it. Cited in support thereof are the cases of Carter Oil Co. v. Eli, 164 Okl. 273, 23 P.2d 985; Powell v. United Mining & Milling Co., 107 Okl. 170, 231 P. 307; Wade v. Hope & Killingsworth, 89 Okl. 64, 213 P. 549; Oklahoma City Electric & Power Co. v. Baumhoff, 21 Okl. 503, 96 P. 758. The former opinion was deliberately considered and is supported by the reasoning and authority therein contained and we see no reason for its reversal.

The principal contention of the plaintiffs in error is that, by the terms of the Essley-Berry contract, under which wells numbered 4, 5, 6, 7, and 8 were drilled and operated, Berry was paid $181,414.74 from ¾ths of the oil produced and $122,620.39 from ½ of the oil produced subsequent to the payment of the former sum or a total of $304,035.13, and that, since Mershon voluntarily accepted the benefits of the Essley-Berry contract, knowing all the facts of the transaction, he impliedly consented to all the obligations and, in equity, should be held responsible for his proportionate part of them. It is argued that, at the time Berry drilled the wells, material and equipment were very scarce and were not obtainable except at exorbitant black market prices; that Berry agreed to and did furnish the necessary equipment and supplies at normal market prices, only because he was to receive ½ of all oil produced, after being reimbursed for such development expense from ¾ths of the oil production; that such bonus payment (½ of net value of production) totaling said $122,620.39 and was a legitimate development expense which should have been allowed in an accounting of net profits. The effect of the trial court judgment was to disallow this latter amount and to allow only the $181,414.74, actual development expense as charged by Berry to Essley under the terms of the Essley-Berry contract.

The principal contention of the defendant in error is that, as to the expense of drilling wells number 1, 2, and 3, the account of Essley, as approved by the trial court judgment, included various items totaling $60,031.61, which were not chargeable as necessary expense of such development; that the trial court was in error in charging Mershon's interest in the production with ⅙ of that amount or $10,005.26 and thus reducing his net judgment as to said wells number 1, 2 and 3 by that amount. Mershon further contends that the judgment in his favor on all amounts

should have included interest thereon from the date each item was received by Essley to the date of judgment.

The contention of plaintiffs in error that, if Mershon is adjudged to be entitled to the benefits of the Essley-Berry contract, he is bound by the obligations thereby imposed, is founded upon the provisions of 15 O.S. 1951 § 75, which is as follows:

"A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known, or ought to be known to the person accepting."

The question here presented, however, is not one which is clearly within or without the sphere of application of the quoted statute. At the time of the development of the property, Essley was denying any title in Mershon; Berry was cognizant of the claim of Mershon and of the pendency of this suit. Therefore, Mershon sought, by this suit, not to obtain the benefits of the Essley-Berry contract, but to have a judicial determination of his interest in realty and to recover his proportionate part of the profit which his cotenant, Essley, had made because of the occupation and operation of the jointly owned property. Under such circumstances the rights and liabilities of the parties are determinable under the firmly established rule of law stated in the following language in the case of Earp v. Mid-Continent Petroleum Corp., 167 Okl. 86, 27 P.2d 855, 856, 91 A.L.R. 188, to-wit:

" * * * When one tenant in common enters upon the premises and produces oil and gas, he is liable to account to his cotenants for the market value of such production less the reasonable and necessary expense of developing, extracting, and marketing the same."

The quoted rule seems to have been adopted in a large majority of the jurisdictions. However, what constitutes necessary and reasonable expenses varies greatly and is dependent upon the circum-stances in each particular case. In the case at bar, many factors must be considered. The evidence offered in the trial court was extensive on most points and as was held by the Kansas Court in the case of Johnson v. Kansas Natural Gas Co., 90 Kan. 565, 135 P. 589, "the rule in suits for accounting generally obtains, and the defendant has the burden of proving what allowances he is entitled to", and "the findings of the trial court made upon conflicting oral evidence are conclusive upon this court." The right to accounting and the proceedings thereunder are purely of equitable cognizance, Hoge v. Hammonds, 192 Okl. 145, 134 P.2d 559, and being such the judgment of the trial court will not be disturbed on appeal unless it is against the clear weight of the evidence. The entire record in the instant case has been checked in detail and the evidence clearly sustains the judgment of the trial court in all conclusions reached as to the net balances due plaintiff.

As to the question of interest, the amount due plaintiff was unliquidated and was not certain or determined until rendition of judgment by the trial court. The liability of Essley was one of implied contract. Thus, plaintiff was not entitled to interest on the amounts due him prior to judgment.

"It must be concluded that the demands of both parties were clearly unliquidated and that no interest should have been allowed prior to judgment fixing the amount due." Dick v. Essary, 201 Okl. 196, 203 P.2d 715, 717.

The judgment bears interest from the date of its rendition by virtue of 15 O.S.1951 § 274, falling clearly within the reasoning of the recent case of M. E. Trapp, Associated v. Tankersley, 206 Okl. 118, 240 P.2d 1091.

The judgment of the trial court is affirmed.

JOHNSON, V. C. J., and WELCH, CORN, ARNOLD, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.