**COAL OIL and GAS COMPANY,**
Plaintiff in Error,
v.
**Mary A. STYRON and J. C. Styron,**
Defendants in Error.
No. 37024.

Supreme Court of Oklahoma.
Oct. 16, 1956.

Rehearing Denied Nov. 27, 1956.

Robinson, Shipp, Robertson & Barnes, Oklahoma City, for plaintiff in error.

Paul & Montgomery, Durant, for defendants in error.

PER CURIAM.

Mary A. Styron and J. C. Styron, as owner of the S/2 SE/4 and NW/4 SE/4 and S/2 NE/4 SE/4 and NW/4 NE/4 SE/4 and SE/4 NE/4 and E/2 SW/4 NE/4 and SW/4 SW/4 NE/4, Section 27, Township 1 North, Range 9 East, containing 220 acres, brought suit in the District Court of Coal County for the cancellation of an oil and gas lease. The lease was made May 6, 1948, and by subsequent assignment the Coal Oil & Gas Company, a corporation, became the lessee. It was for a primary term of three years and as long thereafter as oil and gas could be produced in paying quantities, and contained an implied covenant to develop.

On June 30, 1951, the lessee completed as an oil producer on the SW/4 of SE/4 a well known as Mary Styron No. 1, from which through the years there has been continuous production of oil totaling 147,-213 barrels as of December, 1954; but no other wells have been drilled, nor have any locations for wells been made on the above described property. However, on February 21, 1952, the Coal Oil & Gas Company, being also the lessee of adjacent property, completed as an oil producer on the SE/4 of SW/4, Section 27 (the 40 acre location immediately west of the Mary Styron No. 1) a well known as Daniels No. 2; and on or about April 1, 1953, completed as an oil producer on the NE/4 of SW/4, Section 27 (the 40 acre location immediately north of the Daniels No. 2) a well known as Daniels No. 3. The production from the entire field, of which the Mary Styron No. 1 is a part, is from what is known as "The Oil Creek Sand" and the spacing unit as set by the Corporation Commission is 40 acres. Approximately

eighteen producing wells have been drilled and completed to the west, south and southwest of the well completed on the property involved in this action. On June 1, 1953, on December 21, 1953, and on January 2, 1954, the lessee, Coal Oil & Gas Company, was served notices by plaintiffs to develop the lease of the property herein involved or release the same.

The suit was instituted on June 30, 1954, against the Coal Oil & Gas Company, a corporation, the lessee, and seventeen named defendants who with plaintiff, Mary A. Styron, owned the ⅛th royalty in undivided interests. In addition to reciting the facts above outlined, the petition enumerated the mineral interest of plaintiffs in the property as an undivided 85 acres and itemized the undivided acre mineral interests owned by the seventeen named defendants of the balance of the 220 acres royalty; that the lease held by the defendant, Coal Oil & Gas Company, had expired by its terms; that an unreasonable length of time had elapsed since the drilling of the well on the leasehold estate without further development thereon; that drainage of oil and/or gas was occurring from the leased premises by reason of defendant's production from the adjacent Daniels' wells; and by reason of these circumstances the lease should be cancelled. The answer denied that any drainage was occurring to plaintiffs' property that would have been prevented by the drilling of additional wells thereon; that due to geological information obtained from the drilling of the well on plaintiffs' property and other wells drilled within the area it would appear probable that if a well was drilled on the NW/4 of SE/4 of Section 27, production would be encountered below the level of salt water therein; that the defendant had at all times acted with reasonable prudence, had developed the leasehold with reasonable diligence in the manner that a reasonable prudent operator would have developed it.

The defendants named as owning undivided mineral interests, together with plaintiffs, were not served with summons, or by publication, nor entered their appearance in the trial of the case.

Upon the trial the plaintiffs offered in evidence a map showing the number of wells drilled on this property and adjacent premises, a formation record, an electrical log relating to the Daniels Well No. 3, an electrical log relating to the Mary Styron Well No. 1, the oil and gas lease they were seeking to cancel, and the testimony of J. C. Styron relating to the service of notices to develop the lease upon defendant and further that when he inquired of Mr. Loffland of defendant company requesting development of the lease he was informed by him that there was no chance of production to the north and that they didn't intend to do anything further about it. In addition thereto it was stipulated between the parties that the notices alleged in plaintiffs' petition were given, the respective dates of each, the date of completion of the Mary Styron Well No. 1; the dates of completion of the Daniels Wells Nos. 2 and 3; that there were eighteen producing wells in the field, all to the south, southwest and west of the Styron lease; that since the drilling of the well on the Mary Styron lease on June 30, 1951, there had been no further development thereon. The defendant offered expert testimony of Rycroff G. Moss, a consulting petroleum engineer and geologist, to the effect that the Mary Styron Well No. 1 was an edge well; that it cost approximately $125,000 to drill a well to the oil creek sand in that area; that the geological formation existing to the east of the Mary Styron Well No. 1 made it unlikely that a well drilled upon the Mary Styron lease would return to the operator its cost of drilling and operation; and no undue drainage was occurring from plaintiffs' property to the offset leasehold. On cross-examination he stated that the Daniels Well No. 3 could be draining some oil from plaintiffs' property; that no further wells or development were projected or contemplated at this time; that the reason the defendant desired to keep the lease was be-

cause it was a good size lease and there was a possibility of a separate reservoir to the east of the Styron lease. In addition to such expert testimony the defendant offered the production record of the Styron Well, the Daniels Well No. 2, and two wells known as Pope No. 2 and Pope No. 3, which showed dates of completion and monthly production together with the accumulated total production to and including the month of December, 1954; also two contour maps of the field relating to the oil creek sand and the McLish sand, each showing the water level and oil and water contact reference.

Judgment was entered in favor of plaintiffs cancelling the lease except as to the 40 acre tract on which was the producing well. From that judgment, the defendant has appealed relying upon two propositions.

■ Under the first proposition defendant contends that no evidence was introduced proving a breach of any covenant implied in the lease. In support thereof defendant cites quotations and excerpts from this Court's opinions in Trawick v. Castleberry, Okl., 275 P.2d 292 and Texas Consolidated Oils v. Vann, 208 Okl. 673, 258 P.2d 679, relating to the prudent operator rule and argue in its brief that the effect of the holdings in these cases relate to the shifting of the burden of proof where a mere lapse of time has occurred between operations; and where a delay in development is shown to be unreasonable the question of the cancellation of a lease devolves upon evidence relating to whether or not a commercial producer would result from the requested development. While this Court has so held we have consistently said in those cases: "The court in proper exercise of its equitable jurisdiction may declare a forfeiture of the undeveloped portion of a producing oil and gas lease because of the breach of implied covenant to diligently develop the property when such forfeiture will effectuate justice, but the granting of such relief depends upon the facts and circumstances surrounding the particular case." [275 P.2d 293.]

■ In the instant case the only justification for the defendant's position is that the geologic data and the experience upon surrounding lands are both unfavorable to the drilling of a commercial producer upon the Styron lease. The import of its testimony is that it desires to hold this tract because it might contain a separate reservoir of oil; yet defendant has no present intention of drilling at any time in the near or remote future. We feel this attitude is not in accord with the obligation to prosecute development with due regard to the interests of the lessor. Though there is production on a small portion of the Styron lease, such cannot justify the defendant's holding the balance indefinitely and thereby depriving the lessors not only of the expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing themselves of the mineral content of the land.

With reference to defendant's first proposition the trial court's decision is amply sustained by the decisions of this Court in Doss Oil Royalty Co. v. Texas Co., 192 Okl. 359, 137 P.2d 934, 938, and cases cited therein. In that case it was said:

"* * * To permit the lessee to hold the lease for an unreasonable length of time for merely speculative purposes, is to allow him to protect his own interest and to disregard the interest of the lessor. If conditions do not indicate to him that further development will be profitable, it is but fair that, after a reasonable time has expired, he surrender the undeveloped portions of the lease and allow the lessor to procure development by others or assume the burden of showing why in equity and good conscience the undeveloped portion should not be cancelled so that the owner may, if possible, get it developed by others."

The reasoning, in that case applied, is certainly applicable to the facts in the instant case. The Styron well was the first well drilled in this field. It has produced

over a period of some four years since completion 147,213 barrels of oil, second only in production to one other well. The import of the record conclusively shows that defendant desires to hold the lease purely for speculative purposes by reason of the possibility of a separate reservoir, yet admitting that some drainage may be occurring to plaintiffs' property by its off-set wells and no intention on its part to drill additional wells on plaintiffs' land in the near or remote future. Equity and justice demand that defendant either develop the undeveloped portion of the lease, within a reasonable time, or hand it back to the lessor. This it has not done and there was ample evidence to support the trial court's conclusion that the lease should be cancelled.

However, defendant now contends that the trial court's jurisdiction was limited to a fractional cancellation of the leasehold for the reason that the seventeen named defendants who owned the other undivided interests in the oil, gas and other minerals and mineral rights in and under the land, aggregating $^{135}/_{220}$ths, although named as defendants, were neither summoned nor appeared in the trial of the case.

█ In this jurisdiction, owners of undivided interests in oil, gas and other minerals in land are tenants in common. Each tenant has a separate and distinct freehold. And in the absence of a contract to that effect, a tenant in common is not an agent for his cotenants and a lease executed by him is effective as to his interest and ineffective as to the interest of his cotenants. See Earp v. Mid-Continent Pet. Corp., 167 Okl. 86, 27 P.2d 855, 91 A.L.R. 188. In Moppin v. Norton, 40 Okl. 284, 137 P. 1182, this Court held that one tenant in common may maintain an action to establish his undivided interest in real estate, as against a third person, without joining his cotenants. And in Knox v. Freeman, 182 Okl. 528, 78 P.2d 680, this Court said:

"The owner of an undivided interest in oil and gas rights, although a tenant in common with the owners of the other interest, may separately lease his interest without the consent of his cotenants and may maintain an action against his lessee for the cancellation of the separate lease of his interest without making his cotenants parties to the action."

The record here presented is silent as to a contractual relationship of agency between plaintiff and those named defendants owning the other undivided mineral interest so we must presume that no such contract existed, and plaintiffs had no authority to act for them.

12 O.S.1951 § 230 provides as follows:

"All persons having an interest in the subject and in obtaining the relief demanded may be joined as plaintiffs, except as otherwise provided in this Article; provided that no joint tenant or tenant in common of real estate or an interest therein, shall be barred from prosecuting an action to cancel an oil and gas lease covering the land or interest therein for breach of implied or written covenant of said lease because of the failure of any other joint tenant or tenant in common to join in any notice or demand in said action to cancel said lease, provided that all joint tenants or tenants in common are made parties to said action either as plaintiffs or defendants."

█ By the above statute the Legislature provided the plaintiffs with a proper way to secure a complete determination of the matter. Plaintiffs must have been conversant with this statute when they named the owners of the other mineral interests as defendants. However, it is academic and citation of authority is unnecessary to support a rule that individuals do not become party litigants in an action by merely naming them as defendants. They must either be served with summons or enter an appearance.

█ Clearly, the other owners of undivided portions of the oil and gas rights were necessary parties for they have such

an interest in the subject matter of the controversy that a final decree as here rendered might radically and injuriously affect their interest and leave the controversy in such a situation that its final determination would be inconsistent with equity and good conscience.

■ Here, the judgment of the trial court attempts to adjudicate the rights of defendant under the lease, with respect to the interests of the owners of the interest in the mineral rights, who are not parties to the action. Their rights might very well be injuriously affected by the judgment. Facts may have intervened as between them and the defendant, which operated to extend and keep the lease in full force and effect as to them. We must therefore conclude that such named defendants were indispensable parties to the action in so far as it related to the cancellation of the lease as to their mineral interest, and since they were neither served with summons nor appeared in the trial of the case, the trial court's jurisdiction was limited to a cancellation of only that mineral interest in the property owned by the plaintiffs.

While defendant in its brief argues that the notices of non-development were void for the reason such notices were not joined in by all the cotenants, it neither so contended at the trial in the lower court nor urged it as error in its motion for a new trial. On the contrary defendant at all times contended that the trial court's jurisdiction was limited to that fractional interest owned by plaintiff. Under the oft repeated rule in this court, alleged error not presented in the motion for new trial will not be reviewed by this court. See Logan v. Logan, 197 Okl. 88, 168 P.2d 878.

The judgment is affirmed in so far as it relates to the cancellation of plaintiffs' undivided mineral interest in the undeveloped portion of the lease and reversed in so far as it relates to the cancellation of the mineral interests of such other owners of undivided portions of the oil and gas rights in the undeveloped portion of the lease.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner Jean R. Reed and approved by Commissioners James H. Nease and J. W. Crawford, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in Conference, the foregoing opinion was adopted by the Court.